Carol GOFORTH, Mary Felber, Carl Sandrock,
Don Lowrimore, Nina Lowrimore, Doyle Wright,
Janet Feichtel-Wright, Bill Zemp, and Lawayne Zemp
*v.* Michael SMITH, Judith Carol Smith, and
Southwestern Bell Mobile Systems, Inc.

98-1499 991 S.W.2d 579

Supreme Court of Arkansas
Opinion delivered June 10, 1999
[Petition for rehearing denied July 15, 1999.]

*W. Marshall Prettyman*, for appellants.

*Law Office of Curtis E. Hogue*, by: *Curtis E. Hogue*, for appellees Michael Smith and Judith Carol Smith.

*Catlett, Yancey & Stodola, PLC*, by: *Mark Stodola* and *James D. Rankin III*, for appellee Southwestern Bell Mobile Systems, Inc.

R AY THORNTON, Justice. Appellees, Michael and Judith Smith, as well as all of the appellants, are property owners on West Mountain in Washington County. Appellee, Southwestern Bell Mobile Systems, Inc. (Bell), is a local cellular telecommunications service provider. Since 1965 the Smiths have leased their land for towers for communication services. The property is subject to a restrictive covenant for the benefit of some of the appellants. The covenant prohibits any "noxious, odorous,

or offensive trade or activity." In 1997, Bell and the Smiths entered into a lease allowing Bell to construct a telecommunications tower on the property belonging to the Smiths.

Appellants commenced this action by filing a complaint in the Washington County Chancery Court contending that the construction of the tower in their neighborhood would (1) violate restrictive covenants; (2) constitute a nuisance; (3) lead to detrimental environmental effects from radio frequency emissions; and (4) amount to a misrepresentation made by Michael Smith as to his intended use of his land. Appellants sought injunctive relief and damages, and appellees filed a motion to dismiss, arguing that the allegations concerning the environmental effects of the radio frequency emissions were preempted by federal law.

The matter was set for trial on June 17, 1998, and before witnesses were called, the chancellor issued a ruling on the motion to dismiss, finding that issues relating to the environmental effect of radio emissions were preempted by federal law, and ruling that no testimony would be allowed as to that allegation. Following that ruling the trial proceeded on the remaining issues, at the conclusion of which the trial court entered a decree dismissing appellants' complaint with prejudice. Appellants raise four points on appeal, and finding no error on the part of the trial court, we affirm.

Appellants' first point of appeal is that the trial court erred in finding that the environmental effect of radio emissions had been preempted by Congress by adoption of the Federal Telecommunications Act of 1996, 47 U.S.C.A. § 332 (FTA). We note that notwithstanding this ruling, appellants were allowed to present evidence relating to each of the remaining issues, including whether the construction of the tower constituted a nuisance, whether its construction violated the terms of a restrictive covenant, whether its construction constituted deceit because of a misrepresentation of future plans, and whether appellants' claims were barred by the doctrines of waiver and laches.

In reviewing a trial court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to

the party who filed the complaint. *Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994).

## Federal Preemption

■ From the time of *McCulloch v. Maryland*, 4 Wheat. 316, 407 (1819), it has been accepted that Congress has the authority to preempt state law. It is useful to restate the language of the United States Constitution, which reads as follows:

> [T]his Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding.

U.S. Const. art. 6, cl. 2.

■ In *English v. General Electric Co.*, 496 U.S. 72 (1990), the Supreme Court, in holding that a state law claim for intentional infliction of emotional distress was not preempted by the federal law applicable to the circumstances of that case, pointed out four circumstances for preemption. A state law is preempted: (1) when Congressional enactments explicitly preempt state law; (2) when state law regulates conduct in a field that Congress intended the Federal Government to occupy exclusively; (3) when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress; and (4) when compliance with both state and federal law is impossible. *English v. General Electric Co., supra.*

■ If Congress has not explicitly preempted a state law action, it may still be necessary to determine if the action is preempted by implied preemption. Implied preemption can occur in the following circumstances: (1) when the scope of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the state to act; (2) when the state and federal law actually conflict; (3) when compliance with state and federal law is physically impossible; (4) when the state law stands as an obstacle to the accomplishment of the full objectives of Congress. *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 834 S.W.2d 136

(1992)(*citing, Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947).

The statutory language of the Federal Telecommunications Act of 1996 provides that the act "establishes national public policy in favor of reducing regulation and encouraging the rapid deployment of new telecommunications technologies." *See Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997). Specifically, the language we are asked to interpret states: "[N]o state or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C.A. § 332(c)(7)(B)(iv).

The House Conference Reports on this section of the FTA offers the following insight into the legislative intent of the drafters of § 332. "The conferees intend section 332(c)(7)(B)(iv) to prevent a state or local government or its instrumentalities from basing the regulation of the placement, construction, or modification of CMS facilities directly or indirectly on the environmental effects of radio frequency emissions if those facilities comply with the Commission's regulations adopted pursuant to section 704(b) concerning such emissions." H.R. Conf. Rep. No. 104-458, reprinted in 1996 U.S.C.C.A.N. 124, 222.

The FTA explicitly preempts the state from considering environmental effects of radio frequency emissions when making determinations as to the placement, construction, or modification of telecommunication towers. Congress has considered the issue of preemption in this area and promulgated the following language: "[E]xcept as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a state or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C.A. § 332(c)(7)(A). Immediately following this general authority provision is a list of several limitations to the broad grant of authority given to the states. Among these limitations, states are denied the ability to consider the envi-

ronmental effects of radio frequency emissions when making local construction, placement, and modification decisions of telecommunications towers. 47 U.S.C.A. § 332(c)(7)(B)(iv).

█ The United States Supreme Court has held that if Congress has considered the question of preemption and expressly addressed it within a statute, the states do not need to consider the issue of preemption further. Specifically, the Court held that:

> [W]hen Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority,'"there is no need to infer congressional intent to preempt state laws from the substantive provisions" of the legislation.

Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992)(citations omitted).

It is clear that Congress has preempted consideration of the environmental effects of radio frequency emissions in determining the location of towers; however, appellants argue that this does not preempt private causes of action based upon the environmental effects of those same emissions. In Cipollone v. Liggett Group, Inc. supra, the Supreme Court wrote "[A]t least since Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) we have recognized the phrase "state law" to include common law as well as statutes and regulations."

We note that other jurisdictions have determined in similar circumstances that federal preemption limits private common-law actions as well as state action. In Broyde v. Gotham Tower, Inc., 13 F.3d 994 (6th Cir. 1994), the Sixth Circuit Court of Appeals determined that an action for nuisance, based upon allegations that radio signals exceeded federal standards, was properly dismissed by the district court on the basis of preemption by the Federal Communications Act. The Sixth Circuit noted that the FCC clearly has exclusive jurisdiction over technical matters associated with transmission of radio signals and agreed with the district court when it found that:

> [T]he consistent finding of preemption by all courts that have considered the interaction of common law nuisance claims and

the Federal Communications Act. *See Still v. Michaels*, 791 F.Supp. 248 (D.Ariz.1992)(nuisance action preempted by Federal Communications Act); *Still v. Michaels*, 166 Ariz. 403, 803 P.2d 124 (1990)(FCC has exclusive jurisdiction over resolution of radio signal interference nuisance claims); *Smith v. Calvary Educational Broadcasting Network*, 783 S.W.2d 533 (Mo.Ct.App. 1990) (Federal Communications Act preempts state nuisance action based on radio signal interference with electrical appliances); *Blackburn v. Doubleday Broadcasting Co., Inc.*, 353 N.W.2d 550 (Minn.1984) (radio transmission nuisance claims under exclusive jurisdiction of FCC).

*Broyde v. Gotham Tower, Inc., supra.* The Court of Appeals then stated that with regard to the jurisdiction of the FCC over radio frequency interference:

[S]uch matters shall not be regulated by local or state law, nor shall radio transmitting apparatus be subject to local or state regulation as part of any effort to resolve an RFI complaint. The Conferees believe that radio transmitter operators should not be subject to fines, forfeitures, or other liability imposed by any local or state authority as a result of interference appearing in home electronic equipment or systems.

*Broyde v. Gotham Tower, Inc., supra.* The Sixth Circuit finally stated that "given such explicit congressional pronouncements, enforcement of the plaintiffs' state law nuisance action would frustrate the objectives of the Act." *Id.*

While the extent of the federal preemption in the case before us is based upon a different conference report, we conclude that the language prohibiting state or local consideration of the environmental effects of radio frequency emissions is grounded on the same principles of public policy to establish a uniform national framework of cellular telephone communications.

 Congress has carved out a narrow and well defined area of telecommunications policy in which it has exercised its constitutional authority to preempt state and local laws, and has left substantial elements of zoning and land-use matters to state and local control. However, we conclude that the trial court correctly found that Congress has exercised its authority under the Supremacy Clause of the Constitution to preempt consideration

of the environmental effects of radio emissions by the state. We further conclude that the trial court did not commit error by excluding testimony concerning the environmental effects of such emissions.

*Claims based upon misrepresentation, nuisance, restrictive covenants, and the defense of laches or waiver.*

The Smiths are engaged in radio communication services and lease their land for towers for communication services. The first tower was erected on their property in 1965. That tower, a triangular metal lattice structure, was originally 140 feet tall but is presently seventy feet tall. It has a width of eighteen inches on each side. A second tower was erected in 1988, and was 190 feet in height. All of the appellants either built or purchased their homes after the first tower was erected.

A lease was entered into between the Smiths and Bell in 1997 that allowed Bell to construct a telecommunications tower on the property. The proposed tower would be 170 feet tall and supported by a three-legged base measuring seventeen feet between the legs. The construction costs for the tower was an estimated $630,000. Appellants were notified of the proposed tower in February of 1997.

Appellants objected to the construction of the tower, and, following the trial court's ruling excluding evidence of the environmental effects of radio frequency emissions, a trial was held to consider whether the tower constituted a nuisance or a violation of a restrictive covenant and whether Michael Smith had misrepresented certain facts to the Wrights regarding his intended land use. After the close of the testimony and submission of briefs and suggested findings of fact and conclusions of law, the trial court entered a decree that dismissed appellants' complaint with prejudice.

On appeal, we consider chancery cases *de novo* on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that

a mistake has been committed. *Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999).

For appellants' second point on appeal they contend that the trial court erred when it dismissed appellants Janet and Doyle Wright's misrepresentation claim against appellee Michael Smith. Appellant Janet Wright alleged that Michael Smith represented to her that he did not intend to build additional towers on his property. Mrs. Wright testified at trial that "he [Michael Smith] said if he did anything he might put one other small tower there, but that this property was his grandfather's and that he and his wife would build their home there." Mrs. Wright further testified that "I did not know there would be another tower built on that property. I did not definitely know that. I was told in terms of maybes. That he might put another tower up. I was given notice at the time I bought my property and started building my house that there would likely be another tower built on the Smith property." Finally, Mrs. Wright, discussing an easement granted to her by the Smiths, testified that "in the easement it states that Michael Smith, Darcy Smith, and Judith Smith may place a guy wire in said easement if they deem it necessary for a radio transmission tower. That was something that when he and I had the initial discussion about it he said, 'I might put another small tower someday.' And he said, 'I don't know where it would be.' He said, 'If it needs to be on your easement, is that okay?' I said, 'As long as it doesn't block us going in and out, that's fine.'"

Michael Smith testified that he was asked the following question during a deposition prior to trial 'Did you ever discuss with either of the Wrights any future plans you might have for the property?' My answer was: 'I told her that someday I might build another tower up there.'"

■ ■ At the close of the trial, the chancellor, relying on *P.A.M. Transp. v. Ark. Blue Cross & Blue Shield*, 315 Ark. 234, 868 S.W.2d 33 (1993), dismissed appellants' claim finding that the representation pertained to future events and as such could not constitute a misrepresentation. The essential elements of an action for deceit are as follows: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insuffi-

cient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Golden Tee, Inc. v. Venture Golf Schools, Inc.*, 333 Ark. 253, 969 S.W.2d 625 (1998). An action for fraud or deceit may not be predicated on representations relating solely to future events. *Delta School of Commerce, Inc. v. Wood*, 298 Ark. 195, 766 S.W.2d 424 (1989). However, this rule is inapplicable if the person making the representation or prediction knows it to be false at the time it is made. *Id.*

 The trial court's dismissal was not clearly erroneous. Appellants failed to establish the elements necessary for a misrepresentation claim. Mrs. Wright admitted in her testimony that Mr. Smith never definitively told her that he would not put additional towers on his land. Moreover, Mrs. Wright's testimony regarding the use of her easement by Mr. Smith for the erection of an additional smaller tower demonstrates that Mr. Smith was not trying to mislead the Wrights about his possible future plans. Additionally, whether Mr. Smith planned to erect more towers on his property is an assertion as to future events. Thus, we hold that the trial court did not err when it dismissed the Wrights' cause of action.

 In their third point on appeal, appellants claim that the trial court erred when it applied the doctrines of waiver and laches to their case. Waiver is the voluntary abandonment or surrender by a capable person of a right known to him to exist, with the intent that he shall forever be deprived of its benefits, and it may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it. *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993).

 The right to enforce a restrictive agreement may be lost by laches or acquiescence, especially when one incurs expenditures. *Baldischwiler v. Atkins*, 315 Ark. 32, 864 S.W.2d 853 (1993). The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. *Andarko Petroleum v. Venable*, 312 Ark. 330, 850 S.W.2d

302 (1993). It is based on the assumption that the party to whom laches is imputed has knowledge of his rights and the opportunity to assert them, that by reason of his delay some adverse party has good reason to believe those rights are worthless or have been abandoned, and that because of a change of conditions during this delay it would be unjust to the latter to permit him to assert them. *Self v. Self*, 319 Ark. 632, 893 S.W.2d 775 (1995). Laches requires a demonstration of prejudice to the party alleging it as a defense resulting from a plaintiff's delay in pursuing a claim. *Swink v. Giffin*, 333 Ark. 400, 970 S.W.2d 207 (1998).

 The chancellor did not err by applying the defenses of waiver and laches to appellants' case. All of the appellants purchased their homes after the erection of the first tower on the Smiths's property. The two towers on the property were built in 1965 and 1988. The placement of these two towers have never been challenged. Moreover, appellants have not challenged the placement of these towers in the current case. The Smiths have used their property in the same manner, as the location of communication towers, for thirty years without protest. Relying on the acquiescence of the landowners during the thirty previous years, appellees entered into a contract for the construction of an additional tower valued at $630,000. Appellees would have been prejudiced if the chancellor had granted appellants' injunction. Thus, because appellants sat on their rights and because appellees relied on this acquiescence, the trial court properly applied the doctrines of waiver and laches to appellants' claims.

 In their final point on appeal, appellants contend that the trial court's findings that the proposed tower were neither a violation of the neighborhood restrictive covenants nor a nuisance was clearly erroneous. Restrictive covenants are to be strictly construed against limitations upon the free use of property, and all doubts resolved in favor of the unfettered use of the land. *Casebeer v. Beacon Realty, Inc.*, 248 Ark. 22, 449 S.W.2d 701 (1970). In other words, if there are any doubts, they are to be construed strictly against those seeking to enforce them and liberally in favor of freedom in use of the land. *Id.* This rule of construction is based upon the repugnance of restrictions on the use of land to trade, commerce, recognized business policy, and common-law

rights to use lands for all lawful purposes. Where there is uncertainty in the language by which a grantor in a deed attempts to restrict the use of realty, freedom from restraint should be decreed. *Id.* We have also held that when the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed and that it is improper to inquire into the surrounding circumstances or the objects and purposes of the restriction for aid in its construction. *Casebeer v. Beacon Realty, Inc.*, 248 Ark. 22, 449 S.W.2d 701 (1970).

 Nuisance is defined as conduct by one landowner that unreasonably interferes with the use and enjoyment of the lands of another and includes conduct on property that disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property. *Southeast Ark. Landfill, Inc. v. State*, 313 Ark. 669, 858 S.W.2d 665 (1993). Equity clearly will enjoin conduct that culminates in a private or public nuisance where the resulting injury to the nearby property and residents is certain, substantial, and beyond speculation and conjecture. *See Arkansas Release Guidance Foundation v. Needler*, 252 Ark. 194, 477 S.W.2d 821 (1972). The general rule is that in order to constitute a nuisance, the intrusion must result in physical harm, as distinguished from unfounded fear of harm, which must be proven to be certain, substantial, and beyond speculation and conjecture. It is well settled that a landowner may make such use of his property as he chooses so long as he does not unlawfully or unreasonably interfere with or harm his neighbor. *Miller v. Jasinski*, 17 Ark. App. 131, 705 S.W.2d 442 (1986). It is only the unreasonable use or conduct by one landowner which results in unwarranted interference with his neighbor which constitutes a nuisance. *Id.*

 The chancellor correctly found that the proposed tower did not violate the restrictive covenant nor was it a nuisance. The pertinent language from the restrictive covenant is set forth in the deeds of the property owners in the neighborhood. The language in the covenant states: "No noxious, odorous, or offensive trade or activity shall be permitted." Appellants contend that the placement of the communications tower in their neighborhood would violate this restrictive covenant. The chancellor found that "since a telecommunication tower has operated in the area in

question without objection for more than 30 years and another for 10 years, the drafters of the restrictive covenant did not consider communications towers to be noxious, odorous, or offensive; that those living in the neighborhood have not considered such towers to be noxious, odorous, or offensive; and that those moving to the neighborhood knowing that such towers were in operation did not consider towers to be noxious, odorous, or offensive." These findings were not clearly erroneous. Because the proposed tower did not constitute a noxious, odorous, or offensive activity, the chancellor did not err in his finding that the proposed tower did not violate any restrictive covenants.

The chancellor was correct when he found that the proposed tower did not amount to a nuisance. Appellants failed to show any certain, substantial harm that is beyond speculation or conjecture. They alleged that if the proposed tower were erected the following harms would be suffered by the residents of the neighborhood: (1) the tower would be aesthetically unpleasing; (2) an attractive nuisance would result; (3) the tower would bring additional workmen to the community and cause the safety of the residents to be compromised; and (4) the erection of the tower would cause a proliferation of towers in the community. The chancellor found, and the record supports the finding, that all of the harms alleged by appellants are speculative and are not supported by substantial evidence. Accordingly, we hold that because appellants failed to provide proof of actual substantial harm that they would suffer as a result of the proposed tower, the trial court did not err when it found that the tower was not a nuisance.

Affirmed.