# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3804

_____

Virginia Fowler,        *
         *
      Plaintiff - Appellee,        *
         *    Appeal from the United States
      v.        *    District Court for the
         *    Eastern District of Arkansas.
SmithKline Beecham Clinical        *
Laboratories, Inc.,        *
         *
      Defendant - Appellant.        *

_____

Submitted: April 12, 2000

Filed: August 31, 2000

_____

Before McMILLIAN, FAGG, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Virginia Fowler became a courier for SmithKline Beecham Clinical Laboratories in 1993, picking up laboratory samples from, and delivering test results to, medical service providers in southeast Arkansas. Four years later, SmithKline told Fowler she could no longer use her own car and receive a mileage allowance. Instead, SmithKline would provide and maintain a company car. Fowler worked for eighteen months under the new arrangement and then quit. In the interim, she commenced this action for breach of contract and fraud, alleging that SmithKline had falsely promised she would

receive a mileage allowance for as long as she worked for the company. The district court granted summary judgment dismissing Fowler's contract claim. After a trial, the court submitted her fraud claim to the jury, denied SmithKline's timely motions for judgment as a matter of law, and entered judgment on the jury verdict awarding Fowler $200,000 in compensatory and $1,000,000 in punitive damages. SmithKline appeals. Concluding that Fowler failed to offer sufficient evidence of fraud as a matter of law, we reverse.

We view the facts in the light most favorable to the jury verdict. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000). In late 1992, SmithKline recruited Fowler, then a courier for rival National Health Laboratories. SmithKline hoped that, if Fowler changed employers, her clients would follow. Fowler was interested in joining SmithKline, but only if she could be an employee, rather than an independent contractor, and could use her own car and be paid a mileage allowance. Although most SmithKline employees drove company cars, field manager John Mayer agreed to Fowler's terms at a meeting in January 1993. Fowler started work in February 1993, and within a few months, Fowler's clients transferred their business from National Health to SmithKline.

After joining SmithKline, Fowler heard rumors that Mayer wanted to take away her car allowance, and she pressed him repeatedly for written confirmation of their initial understanding. Finally, in August 1995, Mayer sent Fowler a memorandum stating that she would be paid a mileage allowance for the use of her personal vehicle "for the duration of your employment with SmithKline." Despite this written assurance, Mayer sent Fowler a letter in February 1997 stating that, as of March 3, her car allowance would end and she must begin driving a company car.[1] When Fowler told her immediate supervisor that this would result in a financially ruinous reduction

_____

[1] Defense witnesses explained that Mayer took this action to implement SmithKline's new nationwide policy of standardization.

in Fowler's income, the supervisor replied, "I'm sorry if you don't like it. You have your option of quitting." Fowler began looking for other employment, but she continued working as a SmithKline courier until she resigned in September 1998.

Under Arkansas law, the elements of an action for fraud are "(1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance." Goforth v. Smith, 991 S.W.2d 579, 586 (Ark. 1999). In this case, we conclude that Fowler's evidence was insufficient as a matter of law for at least two reasons.

First, Fowler failed to prove the second element of an action for fraud, knowledge that a material misrepresentation was false when made. The alleged misrepresentation was Mayer's January 1993 assurance that Fowler would be paid a mileage allowance for use of her own vehicle for the duration of her employment as a SmithKline courier.[2] Fowler's fraud theory is that Mayer offered Fowler the mileage allowance planning to take it away after that offer persuaded her to become a SmithKline courier. The obvious problem with the theory is that Mayer kept his word *for over four years*, paying Fowler a mileage allowance until March 1997. As direct

---

[2]This was an affirmative statement concerning a term or condition of Fowler's future employment, a representation unlike the prospective employer's actionable non-disclosure in Interstate Freeway Servs., Inc. v. Houser, 835 S.W.2d 872, 874 (Ark. 1992). We have some doubt whether a promised term of employment is actionable in fraud under Arkansas law where, as here, there was no breach of an employment contract. But since Arkansas law generally provides a fraud remedy if a person makes a promise of future conduct knowing the promise to be false at the time it is made, see Goforth, 991 S.W.2d at 586, we will assume that general rule applies and focus on the question whether Mayer knew his January 1993 statement was false when he made it. Cf. Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc., 926 F. Supp. 835, 848-49 (E.D. Ark. 1996).

evidence of Mayer's alleged deceit, Fowler relies on the testimony of Michael Hickey, a SmithKline area business manager who discussed the possible hiring of Fowler with John Mayer prior to Mayer's January 1993 meeting with Fowler:

> Q.    Were you involved in that decision [to hire Fowler]?
>
> A.    No.  Actually, it was pretty much John [Mayer]'s decision as to whether we could do it or not.  One of the complicating factors was the fact that she owned her own vehicle, and . . . . actually owed more for her car than I think it was worth.
>
> *    *    *    *    *.
>
> Q.    So was the proposal that she continue in that car?
>
> A.    The proposal to John was, which was obviously adverse to existing SmithKline policy, was that we pay her mileage until such time as she had her car paid off.
>
> Q.    All right.  Did John run this proposal by you?
>
> A.    Actually, I ran it by him, and then he was the one that made the decision on whether we could do it or not.
>
> *    *    *    *    *
>
> Q.    Was there any discussion with John about how long this arrangement would be in place?
>
> A.    Actually, when John and I talked, it was to be in place until Virginia's car was paid off.
>
> Q.    Do you know when that was going to be?
>
> A.    I can't remember. I don't remember whether it was a few months, a year.  I can't remember how long it was.

Q. All right. And what was the plan for when the car was paid off?

A. Then she would become just like the rest of the distribution service reps, and have a SmithKline car.

Fowler argues that this testimony establishes Mayer's fraudulent intent, but it does not. Hickey was not Mayer's supervisor. Hiring Fowler was Mayer's decision, and he may well have decided at the January meeting to satisfy Fowler's demand for an open-ended assurance she would be paid a mileage allowance. Moreover, Hickey's only concern was that Fowler be paid a mileage allowance *at least* until she had repaid her car loan. In short, Hickey's testimony is consistent with Fowler's fraud theory, but it is not affirmative evidence of Mayer's alleged intent to deceive.

By contrast, the remainder of the trial record contains overwhelming evidence that, at the time Mayer made the January 1993 promise of a car allowance, he intended to keep that promise. Fowler's car loan was fully repaid by October 1994, the point at which Hickey had initially suggested to Mayer that the mileage allowance could be ended, yet SmithKline continued paying the allowance. Mayer put his January 1993 oral promise in writing in August 1995. Far from suggesting fraudulent intent, Mayer's August 1995 memorandum is strong evidence of his continuing intent to keep his word. Ultimately, SmithKline paid Fowler the mileage allowance until March 1997. "While fraud may be established by circumstantial evidence, the circumstances must be so strong and well connected as to clearly show fraud." Allred v. Demuth, 890 S.W.2d 578, 580 (Ark. 1994). Judged by this standard, Fowler's evidence was insufficient to prove Mayer's fraudulent intent.

Second, Fowler failed to prove justifiable reliance and damage. SmithKline's employee manual made it clear that Fowler was an at-will employee, meaning she could be terminated at any time, with or without cause. See generally Crain Indus., Inc. v. Cass, 810 S.W.2d 910 (Ark. 1991). A pre-employment promise that an employee will enjoy a benefit such as a car allowance "for the duration of her employment" is of no

real value unless a specific term of employment has been defined. To be sure, an employer's promise that induces an at-will employee to change jobs may be enforceable for a reasonable time, see Houser, 835 S.W.2d at 875, and here, a reasonable time might well have been until Fowler's outstanding car loan was repaid. But SmithKline kept Mayer's promise for four years, long beyond any implied reasonable period. Thus, when she accepted SmithKline's job offer in February 1993, Fowler could not have justifiably relied on Mayer's promise to provide her greater car allowance benefits than she in fact received.

It is also significant that Fowler could have refused to accept the change from car allowance to company car in March 1997. In that event, she would have quit or been terminated, and Mayer's promise to pay her a car allowance for the duration of her employment would have been fulfilled. Instead, Fowler accepted the change and continued to work. In other words, her own willingness to accept this change in the terms of her employ created the appearance that SmithKline had failed to keep Mayer's promise. In an at-will employment relationship, this kind of voluntary acceptance precludes a fraud damage claim. Cf. Nicholson v. Simmons First Nat'l Corp., 849 S.W.2d 483, 487 (Ark. 1993); Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1393 n.5 (8th Cir. 1997) (applying Minnesota law).

The judgment of the district court is reversed, and the case is remanded to the district court for entry of judgment dismissing Fowler's claims with prejudice. SmithKline's motion for leave to file a supplemental appendix is denied as moot.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-