**W.H. (Dutch) NOE, d/b/a Ducks & Ducks, Inc.; Tommy Taggart, d/b/a Mallard Magic; and Brian Herndon, d/b/a Big Creek Hunting, Plaintiffs**

v.

**Scott HENDERSON, In His Official Capacity as Director of the Arkansas Game and Fish Commission, Defendant.**

**No. 3:04CV00406 JLH.**

United States District Court,
E.D. Arkansas,
Jonesboro Division.

June 7, 2005.

James F. Swindoll, Attorney at Law, Little Rock, AR, Paul Douglas Mays, Attorney at Law, Benton, AR, for Plaintiffs.

Robert K. Jackson, James Felix Goodhart, Arkansas Game Fish, G. Alan Perkins, James D. Rankin, III, Perkins & Trotter, PLLC, Little Rock, AR, for Defendant.

## OPINION AND ORDER

HOLMES, District Judge.

The issue in this case is whether certain provisions of Section 15.00 of the Arkansas Game and Fish Commission Code are preempted by the Migratory Bird Treaty Act, 16 U.S.C. § 703 *et seq.* and 50 C.F.R.

§ 21.13. The parties have filed cross-motions for summary judgment (Docket # 4 and Docket # 19).

## I.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.,* 344 F.3d 753, 763 (8th Cir.2003). When the moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(c)). The non-moving party sustains this burden by showing that "there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.,* 260 F.3d 837, 841 (8th Cir.2001). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.,* 77 F.3d 263, 264 (8th Cir.1996).

## II.

W.H. (Dutch) Noe owns Ducks & Ducks, Inc., in Lake City, Arkansas, which specializes in raising and selling mallard ducks. Noe sells approximately 250,000 captive-reared mallard ducks per year to hunting clubs, game preserves, retriever trials, and kennel clubs throughout the United States and Canada. Noe previously operated pursuant to Wildlife Breeder/Dealer Permits issued by the Arkansas Game and Fish Commission. On October 5, 2004, Noe was notified by the Commission that he was operating in violation of the permit requirements. Specifically, the letter stated that Noe was operating in violation of AGFC Codes 15.11(B) and 15.13(D). Code 15.11(B) requires birds to be kept in buildings or covered pens that prevent them from leaving the facility and do not allow the entry of wild birds. Code 15.13(D) requires the submission of certain monthly reports. In a letter dated October 6, 2004, Noe told the Commission that he was not required to comply with these State regulations. Noe argued that the regulations that pertain to the breeding and selling of captive-reared mallards are preempted by federal statutes and regulations, specifically 16 U.S.C. § 703 and 50 C.F.R. § 21.13. The Commission disagreed and on November 22, 2004, revoked Noe's permits.

Tommy Taggart operates Mallard Magic in Augusta, Arkansas. He raises captive-

reared mallards and operates a commercial shooting preserve. Taggart purchases some of his captive-reared mallard ducks from Noe. Taggart previously operated pursuant to Game Bird Shooting Resort Permits and Wildlife Breeder/Dealer Permits issued by the Commission. On October 5, 2004, Taggart was informed by the Commission that his operations were in violation of Codes 15.05, 15.08(C), and 15.11(B) of the Arkansas Game and Fish Commission regulations. Code 15.05 prohibits the release of certain birds, including mallards, into the wild without prior approval of the Commission. Code 15.08(C) requires that the exterior boundaries of a game bird shooting resort be clearly defined and posted with signs at intervals of 300 feet or less and bearing the words, "Commercial Game Bird Shooting Resort." As noted above, Code 15.11(B) requires that birds be kept enclosed in buildings or covered pens. The Commission warned Taggart that if he failed to comply with the regulations his permits would be revoked. Taggart did not comply, and the Commission revoked his permits on November 19, 2004. Taggart appealed the decision. The Honorable Jack Holt, Jr.,[1] acting as an independent hearing officer for the Commission, upheld the Commission's revocation decision in an order dated March 18, 2005. Judge Holt held that the Code sections at issue are not preempted by the Migratory Bird Treaty Act or 50 C.F.R. § 2113.

Brian Herndon operates Big Creek Hunting, which provides room and board, as well as guide services, for duck hunters and deer hunters. Herndon has not held any permits from the Commission relating to captive-reared mallard ducks. In 2004, Herndon purchased approximately 2,000 captive-reared mallard ducks from Noe. Herndon released the mallards on his property in Lee County, Arkansas. On August 13, 2004, the Arkansas Game and Fish Commission issued Herndon a citation for violating Code 15.05 of the Arkansas Game and Fish Commission regulations. Herndon appealed. Judge Harvey L. Yates of the Circuit Court of Lee County, Arkansas, held that Code 15.05 is preempted by the Migratory Bird Treaty Act and therefore dismissed the charges against Herndon. The Commission has petitioned the Supreme Court of Arkansas for a writ of certiorari, seeking review of that decision. *Ark. Game & Fish Comm'n v. Brian Herndon,* Ark. Sup.Ct. No. CR 05–356. A per curiam order directing the issues to be briefed is found at 2005 WL 984516 (Ark. April 28, 2005).

Noe, Taggart and Herndon filed this action on December 15, 2004. They allege that Codes 15.01, 15.05, 15.11(B), 15.12, and 15.13(D) of the Arkansas Game and Fish Commission's regulations are preempted by the Migratory Bird Treaty Act and 50 C.F.R. § 21.13.Code 15.01 prohibits the possession of wildlife with certain exceptions, the pertinent ones of which require permits. Code 15.12 establishes requirements for Wildlife Breeder/Dealer Permits. The relevant portions of other Codes at issue are explained above. Although the issues in this case were decided by Judge Holt in the Taggart administrative proceeding and by Judge Yates in the *Herndon* judicial proceeding, no party has asserted that the State administrative and judicial proceedings give rise to issue preclusion or claim preclusion here.

### III.

Whether the Arkansas Game and Fish Commission's regulations concerning captive-reared mallard ducks are preempted by the Migratory Bird Treaty Act is a question of law. *Hardin v. BASF Corp.,*

---

**1.** Retired Chief Justice of the Supreme Court of Arkansas.

397 F.3d 1082, 1085 (8th Cir.2005). State law that interferes with or is contrary to federal law is invalid by virtue of the Supremacy Clause of the Constitution. *Id.* "State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, and when state law directly conflicts with federal law." *Chapman v. Lab One,* 390 F.3d 620, 624 (8th Cir.2004). "Federal regulations also may preempt state law, if the agency intends its regulations to have preemptive effect, and the agency is acting within the scope of its delegated authority." *Chapman,* 390 F.3d at 624–25.

The Tenth Circuit has described the history of the Migratory Bird Treaty and the Act implementing it as follows:

In 1916, the United States of America and the United Kingdom of Great Britain and Ireland entered into a convention 'for the protection of migratory birds in the United States and Canada....' Convention between United States and Great Britain for the Protection of Migratory Birds, 39 Stat. 1702 (1916). The Migratory Bird Treaty Act was enacted to give effect to that treaty in July of 1918. 16 U.S.C. § 703 *et seq.* The constitutionality of both the Treaty and the Act was subsequently tested and upheld in *Missouri v. Holland,* 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920). In 1936, the United States of America and the United Mexican States entered into a similar agreement for the protection of migratory birds and game mammals. Convention for the Protection of Migratory Birds and Game Mammals, 50 Stat. 1311 (1936). [Footnote omitted.] The Act was amended to include the terms of that treaty.

Later, in March of 1972, the United States and the Government of Japan entered into a similar convention which was thereafter incorporated into the provisions of the Act. Convention for Protection of Migratory Birds and Birds in Danger of Extinction in their Environment. 25 U.S.T. 3329.

*United States v. Conners,* 606 F.2d 269, 271 (10th Cir.1979).

■ The Migratory Bird Treaty Act authorizes the Secretary of the Interior to adopt regulations governing and permitting the hunting, possession, sale, and transportation of migratory birds consistent with the treaties. 16 U.S.C. § 703(a). Nothing in the Migratory Bird Treaty Act expressly prohibits State regulation of migratory birds. To the contrary, the Migratory Bird Treaty Act expressly permits State regulation:

Nothing in this subchapter shall be construed to prevent the several States and Territories from making or enforcing laws or regulations not inconsistent with the provisions of said conventions or of this subchapter, or from making or enforcing laws or regulations which shall give further protection to migratory birds, their nests, and eggs....

16 U.S.C. § 708. "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

■ Noe, Taggart, and Herndon rely upon 50 C.F.R. § 21.13, which provides, in part:

Captive-reared and properly marked mallard ducks, alive or dead, or their eggs may be acquired, possessed, sold, traded, donated, transported, and disposed of by any person without a permit, subject to the following conditions, restrictions, and requirements:

.        .        .        .        .

(b) All mallard ducks possessed in captivity, without a permit, shall have been physically marked by at least one of the [methods provided in this regulation]. . . .

(c) When so marked, such live birds may be disposed of to, or acquired from, any person and possessed and transferred in any number at any time or place: *Provided,* That all such birds shall be physically marked prior to sale or disposal regardless of whether or not they have attained 6 weeks of age.

(d) When so marked, such live birds may be killed, in any number, at any time or place, by any means except shooting. Such birds may be killed by shooting only in accordance with all applicable hunting regulations governing the taking of mallard ducks from the wild: *Provided,* That such birds may be killed by shooting, in any number, at any time, within the confines of any premises operated as a shooting preserve under State license, permit or authorization; . . . .

Noe, Taggart, and Herndon contend that this provision prohibits a State from requiring a permit for the possession and selling of captive-reared mallard ducks. They assert that 50 C.F.R. § 21.13 "allows owners to use captive-reared mallards, trade them or kill them without ANY regulation or permit except when the owners shoot them during the regular duck season." Brief in Support of Plaintiffs' Response to Motion to Dismiss or for Summary Judgment at 4 (emphasis in the original). That argument overstates the breadth of § 21.13. Section 21.13 creates an exception to the requirement of a federal permit, not an exception to the requirement of a State permit. The purposes of Part 21 of 50 C.F.R. are, first, to supplement the general regulations for permits issued by the Department of the Interior with requirements for permits pertaining to migratory birds and, second, to create certain exceptions to the permit requirements. 50 C.F.R. § 21.1. Part 21 addresses requirements for and exceptions to permits issued by the Department of the Interior. Hence, when 50 C.F.R. § 21.13 states that captive-reared mallard ducks may be acquired, possessed, and so forth "without a permit," it means without a permit from the Department of the Interior.

■ Captive-reared mallard ducks are not within the scope of the Migratory Bird Treaty Act. *Conners,* 606 F.2d at 272. Hence, 50 C.F.R. § 21.13 recognizes the distinction between wild mallard ducks, which are governed by the Migratory Bird Treaty Act, and captive-reared mallard ducks, which are not. *Id.* A permit from the Department of the Interior is required to take, possess, import, export, transport, sell, purchase, or barter any migratory bird, which includes a wild mallard duck. 50 C.F.R. § 21.11. No permit from the Department of the Interior is required to take, possess, etc., a captive-reared mallard duck. Section 21.13 recognizes that distinction. Section 21.13 does not, as plaintiffs argue, create a right to possess and sell captive-reared mallard ducks without a State permit.

Nothing in § 21.13 prohibits a State from regulating the raising, use, or transportation of captive-reared mallard ducks. Neither the Migratory Bird Treaty Act nor the regulations implementing it preempt State regulations pertaining to captive-reared mallard duck permits.

The issue then remains as to whether the Arkansas Game and Fish Commission's Codes 15.01, 15.05, 15.11(B), 15.12 and 15.13(D) conflict directly with the Migratory Bird Treaty Act. They do not. Nothing in the Migratory Bird Treaty Act prohibits a State from requiring a permit for possession or sale of captive-reared mallard ducks, from requiring that such

ducks be kept in a building or enclosed pen, or from prohibiting the release of such ducks into the wild. Nothing in the sections of the Arkansas regulations at issue conflicts with the Migratory Bird Treaty Act.

## CONCLUSION

Accordingly, the defendant's motion for summary judgment (Docket # 4) is GRANTED. The plaintiffs' cross-motion for summary judgment (Docket # 19) is DENIED.

IT IS SO ORDERED this *6th* day of June, 2005.