No. 2-09-1083      Filed: 11-29-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BARBARA RUISARD, JEFF REBER, JENNIFER and BILL DILLARD, KAREN and FORREST DEAN, REBECCA and JOHN DUMERER, MARIE and JIM NEWMAN, KRISTIN and JAMES RISNER, and SUSAN and JEROME ZYBKO, | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 08--CH--2550 |
| THE VILLAGE OF GLEN ELLYN, T-MOBILE CENTRAL LLC, and T-MOBILE USA, INC., | ) ) ) ) ) | Honorable Bonnie M. Wheaton, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, Barbara Ruisard, Jeff Reber, Jennifer and Bill Dillard, Karen and Forrest Dean, Rebecca and John Dumerer, Marie and Jim Newman, Kristin and James Risner, and Susan and Jerome Zybko, are residents of Glen Ellyn who oppose the addition of cell phone antennae to the Glen Ellyn water tower. Plaintiffs' pleadings, which culminated in a second amended complaint, relied on two ordinances passed by the Village of Glen Ellyn (Village). Defendants, the Village, T-Mobile Central LLC, and T-Mobile USA, Inc. (T-Mobile), moved to dismiss plaintiffs' second amended complaint. The trial court granted defendants' motion to dismiss, and plaintiffs appeal. We affirm in part, reverse in part, and remand the cause.

No. 2--09--1083

I. BACKGROUND

On February 11, 1991, the Village passed ordinance No. 3810, which granted a special-use permit for the construction of a water tower on certain property owned by the Village. Glen Ellyn Ordinance No. 3810 (eff. February 11, 1991). Ordinance No. 3810 provides that this special-use permit is "subject to the following conditions," including the condition that "[a]ntennas on the new tower are to be kept at a minimum."

Sixteen years later, in 2007, there were 13 antennae on the water tower. That year, T-Mobile applied for a special-use permit to install nine additional antennae on the water tower. On August 27, 2007, the Village passed ordinance No. 5606, entitled an "Ordinance Granting T-Mobile, Inc. approval of a Special Use Permit to allow the installation of a Cellular Antenna Structure On the Village of Glen Ellyn Water Tower." Glen Ellyn Ordinance No. 5606 (eff. August 27, 2007). Ordinance No. 5606 includes "findings of fact" that: "1.) the cellular telephone reception of a substantial number of Glen Ellyn residents and visitors to the community will be greatly improved by the addition of an antenna at this location which will enhance the public health and safety; 2.) technological changes have allowed the size of the cellular telephone antenna to be reduced in size; 3.) the location of a total of only three cellular telephone companies on the water tower along with some essential public uses has kept such placement of antennae on the water tower at a minimum and; 4.) the presence of federal law which limits the discretion of the Village Board regarding alternate placement of antennae on private property could result in less desirable placement if the Village-owned site was not, in this case, available." Glen Ellyn Ordinance No. 5606 (eff. August 27, 2007). Ordinance No. 5606 allows a "7-foot 5-inch cellular antenna structure[1] to be placed on

---

[1]Plaintiffs refer to this structure as a "Megapod," which defendants argue is a derogatory term

-2-

the top of the 125-foot municipal water tower" for a total height of "132 feet 5 inches." Glen Ellyn Ordinance No. 5606 (eff. August 27, 2007).

Nearly one year after the passage of ordinance No. 5606, on July 7, 2008, plaintiffs filed their complaint for injunctive and other relief as well as a motion for a temporary restraining order to prevent the installation of T-Mobile's structure and antennae. Shortly thereafter, plaintiffs filed their first amended complaint on July 24, 2008. The Village and T-Mobile filed individual motions to dismiss under sections 2--615 and 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615, 2--619 (West 2008)), seeking dismissal under several different theories.

## A. Trial Court Order

On April 1, 2009, the trial court issued a written memorandum opinion in response to defendants' motions to dismiss plaintiffs' first amended complaint. According to the court, counts I, II, and III, "stripped of irrelevant rhetoric," alleged that the Village had violated ordinance No. 3810 by failing to keep the number of antennae on the water tower to a minimum. Counts IV, V, and VI, "similarly stripped of irrelevant rhetoric," alleged that the Village had violated ordinance No. 5606 by allowing T-Mobile to construct its antennae beyond the height restriction.

The court began by discussing what plaintiffs needed to allege in their complaint to establish standing. Counts I and IV were premised on section 11--13--15 of the Illinois Municipal Code (Municipal Code), which states as follows:

"In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures,

_____

that should be disregarded by this court. Consistent with the language of the ordinance, we refer to the apparatus as a "structure."

or land, is used in violation of an ordinance *** any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation. ***

* * *

An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions."  65 ILCS 5/11--13--15 (West 2008).

The court noted that in order to have standing to challenge either ordinance No. 3810 or ordinance No. 5606 under section 11--13--15 of the Municipal Code, plaintiffs needed to allege that they were owners or tenants within 1,200 feet of the water tower.  (It is undisputed that plaintiffs are all residents within 1,200 feet of the water tower.)

Counts II and V were premised on section 10--10--18(B) of the Glen Ellyn Zoning Code (Zoning Code), which states:

"In case any building or structure is erected, constructed, reconstructed, altered, repaired, converted, or maintained, or any building, structure or land is used in violation of this Zoning Code, the proper authorities of the Village or any person whose property value or use is or may be affected by such violation may, in addition to other remedies, institute

an appropriate action or proceeding in equity to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct or abate such violation, to prevent the occupancy of said building, structure or land or to prevent any illegal act, conduct, business or use in or about the premises ***."  Glen Ellyn Zoning Code §10--10--18(B) (amended eff. June 1, 1989).

The court noted that to establish standing under the Zoning Code, plaintiffs needed to allege that they were persons "whose property value or use is or may be affected by such violation."

Finally, counts III and VI sought a declaratory judgment that T-Mobile acquired no rights to install the structure and antennae.  According to the court, standing under those counts required plaintiffs to allege facts "constituting an actual case or controversy."

With respect to counts I, II, and III based on ordinance No. 3810's "at a minimum" requirement, the court recognized that that phrase was susceptible to "any number of interpretations." The court reasoned that it should give deference to the Village's own interpretation, especially given the changes that had taken place over the 16-year period between the adoption of ordinance No. 3810 and ordinance No. 5606.  Nevertheless, the court determined that it need not define the phrase "at a minimum," because plaintiffs had "simply failed to allege how they are or will be damaged by the existence of an additional 9 antennae in addition to the 13 antennae already atop the water tower." According to the court, plaintiffs' allegations were "vague and amorphous" and related "to the existence of the water tower and the cellular telephone antennae in general."  To establish their standing to enforce ordinance No. 3810, the court stated, plaintiffs needed to "plead facts to establish that they [would] be damaged by the specific installation of additional antenna[e]."  Emphasis in original.  Because plaintiffs had failed to allege "facts to support their standing under either of the

State or Village statutes," they were likewise unable to obtain a declaratory judgment. In other words, by plaintiffs' failure to allege facts to support their standing, the court concluded that "there [was] no case or controversy."

With respect to ordinance No. 5606, the court noted that under section 11--13--25 of the Municipal Code, a challenge to the ordinance itself must be brought within 90 days of its enactment:

"(a) Any decision by the corporate authorities of any municipality, home rule or non-home rule, in regard to any petition or application for a special use, variance, rezoning, or other amendment to a zoning ordinance shall be subject to de novo judicial review as a legislative decision, regardless of whether the process in relation thereto is considered administrative for other purposes. Any action seeking the judicial review of such a decision shall be commenced not later than 90 days after the date of the decision." 65 ILCS 5/11--13--25 (West 2008).

The court reasoned that under section 11--13--25, plaintiffs' case could not be "centered on the propriety of the ordinance." However, the "verbiage" of plaintiffs' first amended complaint appeared to "challenge the entirety" of ordinance No. 5606 itself. This was not allowed, because section 11--13--25 barred plaintiffs from seeking de novo review of ordinance No. 5606 beyond the 90-day limitations period. Furthermore, plaintiffs' argument that ordinance No. 5606 could still be attacked based on T-Mobile's lack of compliance with the ordinance's terms and conditions was, according to the court, "interesting but misplaced." While plaintiffs could seek enforcement of ordinance No. 5606, they could not collaterally attack it after the expiration of the 90-day period. Plaintiffs' arguments that their properties were or would be devalued by the existence of the antennae on the water tower were "germane only to the entire Ordinance, not to the issue of the antennae extending

above the permitted height per Ordinance 5606." The court went on to say that although plaintiffs alleged that their properties were or would be adversely affected by the adoption of ordinance No. 5606, they "failed to allege how they [were or would be] disadvantaged by the violation of that ordinance, i.e. the exceeding of the height limitation contained in the ordinance." (Emphasis in original.) Because their challenge to the ordinance itself was time-barred, plaintiffs needed to allege how they were negatively impacted by the "violation, and this they have failed to do." (Emphasis in original.) The court thus determined that plaintiffs had failed to plead facts that would establish their "standing to petition for enforcement of Ordinance 5606." As a result, there was no actual case or controversy, and counts IV, V, and VI were stricken for failure to state a cause of action.

After dismissing plaintiffs' first amended complaint in its entirety, the trial court granted plaintiffs leave to file a second amended complaint. Plaintiffs filed their second amended complaint for injunctive and other relief on May 8, 2009.

### B. Second Amended Complaint

We begin by summarizing the lengthy "Factual Background" of plaintiffs' second amended complaint. The water tower was constructed in 1992 pursuant to ordinance No. 3810. In 1994, Ameritech was granted a special-use permit to construct two, three-foot-high cellular antennae on top of the water tower. (Verizon subsequently purchased Ameritech's antennae.) At that time, the only antennae on top of the water tower were two DuComm safety antennae dedicated to the Village's police and fire departments. In 1999, AT&T was granted a special-use permit to install 9 antennae directly below the ball of the water tower, bringing the total number of antennae to 13. T-Mobile was then granted a special-use permit in 2007 to install a structure and nine antennae on top of the water tower (ordinance No. 5606). Prior to the Village's decision to grant this special-use

permit, plaintiffs opposed the installation of T-Mobile's antennae, arguing that adding nine antennae could create dangerous levels of radio frequency (RF) emissions; that T-Mobile's antennae could interfere with the transmissions of DuComm's two safety antennae; that such a "highly visible, galactic structure" sitting atop the water tower would diminish property values; and that ordinance No. 3810 prohibited the Village from "nearly doubling" the number of antennae on the water tower. Despite these objections, the Village granted T-Mobile a special-use permit to install the structure and antennae.

Plaintiffs alleged in their second amended complaint that they had standing to enforce ordinance Nos. 3810 and 5606. As they argued prior to the enactment of ordinance No. 5606, plaintiffs alleged that the installation of T-Mobile's antennae violated ordinance No. 3810 because defendants were not keeping antennae "at a minimum." In addition, plaintiffs alleged that defendants had violated ordinance No. 5606 in four ways: (1) by exceeding the antennae height restriction; (2) by the unauthorized mounting of Verizon antennae on the T-Mobile structure; (3) by constructing large, high voltage equipment on the water tower lot but neither on nor in the water tower; and (4) by creating potentially dangerous levels of RF emissions.

First, plaintiffs alleged that prior to the installation of T-Mobile's structure and nine antennae, the only antennae that could be seen from all views were the two DuComm safety antennae. However, the original DuComm antennae were much lower and narrower than now. The DuComm antennae had been relocated onto T-Mobile's structure and exceeded the 140-foot height restriction by approximately 7 feet. (Ordinance No. 5606 permits T-Mobile to relocate the DuComm antennae if necessary to ensure that DuComm maintains an unobstructed view. It states that "[i]n the event that the DuComm antennas exceed their current height of 140 feet, such relocation will require

approval of a Special Use Permit for such purpose." Glen Ellyn Ordinance No. 5606 (eff. August 27, 2007).) The Village conceded that T-Mobile would have to seek a new special-use permit because it could not bring the DuComm antennae into compliance with the 140-foot height restriction in ordinance No. 5606. T-Mobile had not applied for such a special-use permit.

Second, plaintiffs alleged that prior to the installation of T-Mobile's structure and antennae, the two Verizon antennae were barely visible due to their location on the water tower. However, T-Mobile had relocated Verizon's antennae onto its structure, making them "highly visible from all views" and making them exceed the 132.5-foot-height restriction by 2.5 feet. According to plaintiffs, no language in ordinance No. 5606 permitted T-Mobile to relocate Verizon's two antennae. Also, ordinance No. 5606 provides that the antennae on the structure (other than the DuComm antennae) may not exceed a height of 132.5 feet. While plaintiffs had previously alleged that T-Mobile's own antennae exceeded the 132.5-foot-height restriction because at least one of the antennae was 133.14 feet high, plaintiffs conceded that during the pendency of the instant lawsuit, defendants had succeeded in lowering T-Mobile's antennae below the 132.5-foot-height restriction. Still, defendants "did not and could not lower the DuComm or Verizon" antennae "within their respective 140- and 132.5[-foot]-height restrictions." (As for the AT&T antennae, plaintiffs conceded that because of their location on the stem of the water tower, they were not nearly as visible as the T-Mobile antennae.)

Third, plaintiffs alleged that ordinance No. 5606 requires that "all equipment related to T-Mobile's operation" of its antennae "be mounted on or contained within" the water tower. However, defendants had installed "dangerous high voltage equipment" on the water tower lot but "neither mounted on nor contained within" the water tower. Plaintiffs relied on T-Mobile's "Narrative

Statement," which was incorporated into ordinance No. 5606, in which T-Mobile stated that the "establishment, maintenance and operation of this communications facility will be wholly contained in and on the existing municipal water tank." According to plaintiffs, the narrative statement said nothing about locating large, high voltage electrical boxes on the water tower lot.

Fourth, plaintiffs alleged that T-Mobile submitted an RF emissions compliance report as part of its application for a special-use permit. The report concluded that, based on modeling measurements, T-Mobile's antennae did not present any health risks to humans. Within the past month, however, defendants had "permanently affixed a conspicuous, highly visible sign to the outside" of the water tower, which reads "CAUTION Beyond this point: Radio frequency fields at this site may exceed FCC rules for human exposure." Below that, the sign reads "For your safety, obey all posted signs and site guidelines for working in radio frequency environments." In small print, the sign says "[i]n accordance with Federal Communications Commission rules on radio frequency emissions 47 CFR 1.1307(b)." Plaintiffs alleged that by "acknowledging the presence of potentially dangerous levels of radio frequency fields," defendants were violating ordinance No. 5606. Also, plaintiffs alleged that ordinance No. 5606 does not authorize the posting of any signage on the water tower.

Plaintiffs went on to allege, in their factual background, that they were damaged in two ways. First, plaintiffs' property values had decreased by at least 3% to 5% because T-Mobile's structure and antennae were "highly visible, incredibly unsightly, and completely inconsistent" with a residentially zoned neighborhood; they changed the fundamental character of the water tower into a cellular tower; and they interfered with plaintiffs' use and enjoyment of their properties by obstructing views and blocking sight lines. To quantify the "negative impact," plaintiffs attached their own affidavits

averring that "the loss to their respective properties ranges anywhere from $11,000 to $54,000." Second, T-Mobile's structure and antennae created the possibility of a health hazard by emitting dangerous levels of RF emissions, which had caused plaintiffs' properties to diminish and had caused plaintiffs to experience "concern, fear, anxiety, or emotional unrest."

As in plaintiffs' first amended complaint, counts I, II, and III of their second amended complaint pertained to ordinance No. 3810, whereas counts IV, V, and VI pertained to ordinance No. 5606.

Count I, premised on section 11--13--15 of the Municipal Code, alleged that the installation of T-Mobile's nine antennae violated the "at a minimum" requirement in ordinance No. 3810. Specifically, plaintiffs alleged that defendants were failing to keep antennae at a minimum by creating "dangerous levels of RF emissions" and by "installing high voltage electrical cabinets and boxes outside" the water tower. Plaintiffs alleged that they would be "substantially affected" by this violation because their property values would decrease and because of the "anxiety and emotional unrest" they would experience "as a result of living next to a potential health hazard." They requested the court to enter temporary and permanent injunctions requiring defendants to remove T-Mobile's structure, antennae, and related equipment from the water tower.

Count II, premised on Zoning Code section 10--10--18(B), alleged that defendants were violating the "at a minimum" requirement in ordinance No. 3810 for the same reasons as in count I. Plaintiffs alleged in count II that their "property values and uses will or may be affected" by: the installation of "highly visible, unsightly, and intrusive" antennae, the structure, and "dangerous high voltage electrical equipment"; the obstruction of and interference with the "views and sight lines"

from plaintiffs' properties; and the presence of potentially harmful RF emissions.  Count II requested the same relief as in count I.

Count III sought a declaratory judgment against defendants for violating ordinance No. 3810. According to plaintiffs, an actual and justiciable controversy existed.  Specifically, defendants were not keeping antennae "at a minimum" because (1) there were "acceptable alternative sites" in Glen Ellyn for T-Mobile's antennae; (2) the installation required defendants to locate large, high voltage electrical equipment outside the water tower; and (3) potentially dangerous RF levels were emanating from the water tower lot.  Plaintiffs alleged that T-Mobile thus acquired "no rights to install" antennae on the water tower, rendering ordinance No. 5606 a nullity.

If the court did not determine that defendants had violated ordinance No. 3810, plaintiffs pleaded counts IV, V, and VI, in the alternative.  In count IV, premised on section 11--13--15 of the Municipal Code, plaintiffs alleged the same four violations of ordinance No. 5606 that were stated in the "Factual Background."  First, plaintiffs alleged that defendants violated ordinance No. 5606 by installing the DuComm antennae at a height greater than 140 feet.  The second alleged violation was that defendants had mounted Verizon antennae on T-Mobile's structure.  Even if it were lawful to mount the Verizon antennae on the structure, plaintiffs alleged, defendants were still violating the 132.5-foot-height restriction for all antennae (except DuComm).[2]  Third, plaintiffs alleged that defendants violated ordinance No. 5606 by locating T-Mobile's high voltage electrical equipment outside the water tower.  The fourth alleged violation of ordinance No. 5606 was the emission of potentially dangerous RF levels.  According to plaintiffs, they would be "substantially affected" by

[2]This claim contradicts plaintiffs' factual background, in which they conceded that T-Mobile's antennae now complied with ordinance No. 5606's height restriction.

these violations of ordinance No. 5606 because their property values would decrease and because of the "concern, fear, anxiety, and emotional unrest" they would experience living next to a potential health hazard. In terms of relief, plaintiffs requested the court to enter an order requiring defendants to remove T-Mobile's structure, antennae, and related equipment from the water tower.

Count V, premised on Zoning Code section 10--10--18(B), alleged the same four violations as in count IV. Plaintiffs alleged that their property values "will or may be affected by" these violations in that their property values would decrease based on the excessive heights of the antennae; the mounting of the Verizon antennae on the structure, making them highly visible and unsightly; the high voltage electrical equipment outside the water tower; and the emission of potentially dangerous RF levels. Similarly, plaintiffs alleged that their use of their properties "will or may be affected" by the excessive heights of the antennae obstructing and interfering with their views and sight lines, and the presence of potentially harmful RF emissions coming from the water tower. Plaintiffs requested the court to enter temporary and permanent injunctions requiring defendants to remove T-Mobile's structure, antennae, and related equipment from the water tower.

Count VI sought a declaratory judgment against defendants and was again based on the same four alleged violations of ordinance No. 5606. As a result of these violations, plaintiffs alleged, T-Mobile had acquired no rights under ordinance No. 5606 to install its antennae on the water tower.

Defendants filed a joint motion to dismiss plaintiffs' second amended complaint under sections 2--615 and 2--619 of the Code. Defendants' joint motion incorporated their previous individual motions to dismiss. In their motion, defendants argued that plaintiffs had alleged the same six counts that were dismissed in their first amended complaint. According to defendants, because plaintiffs could not seek de novo review of ordinance No. 5606 due to the expiration of the 90-day

statute of limitations, plaintiffs appeared to be arguing that ordinance No. 5606, by allowing the installation of T-Mobile's antennae, violated the "at a minimum" language in ordinance No. 3810. Defendants maintained that this argument by plaintiffs was still a "time-barred, collateral attack" on the enactment of ordinance No. 5606, in that plaintiffs were "in reality seeking judicial review of the Village's legislative decision to adopt" ordinance No. 5606. Because cellular antennae already existed on the water tower prior to the addition of T-Mobile's antennae, plaintiffs' arguments as to visibility, unsightliness, inconsistency with the residentially zoned neighborhood, diminished property values, and obstruction of view amounted to a "direct" attack on ordinance No. 5606, which attack was barred by the 90-day statute of limitations for challenging that ordinance. With respect to plaintiffs' arguments about the "purported risk posed" by RF transmissions, defendants argued that the Telecommunications Act of 1996 (47 U.S.C. §332(c)(7)(B)(iv) (2006)) applied when addressing any health risks associated with cellular towers and thus preempted that field.

Plaintiffs responded to defendants' motion to dismiss, arguing as follows. Neither section 11--13--15 of the Municipal Code nor section 10--10--18(B) of the Zoning Code required plaintiffs to plead damages to establish standing. Instead, section 11--13--15 required plaintiffs to allege only a "substantial effect" from a violation of the ordinance, and section 10--10--18(B) required plaintiffs to allege only that their property values or use "may be affected." Even so, plaintiffs argued, they still alleged damages in their second amended complaint. Also, plaintiffs argued that they had standing based on the alleged violations of both ordinances.

On September 14, 2009, the court held a hearing on defendants' motion to dismiss. Defendants argued that plaintiffs had not alleged anything new except for their claim of RF transmissions, which was barred by the Telecommunications Act, the existence of the electrical box

at the base of the water tower, and the caution sign on the water tower. Plaintiffs were, defendants argued, still essentially making a "de novo challenge" to the ordinance. However, the Village had already looked at various factors in enacting ordinance No. 5606 "and decided[,] with telecommunications as they are now," that the antennae were "still at a minimum on the water tower." As for the DuComm antennae, defendants admitted that they exceeded the height restriction, but argued that the Village could issue T-Mobile a special-use permit. Any other "height discrepancy in the 132.5 foot limit in the ordinance" was de minimis, defendants argued. Essentially, defendants argued that plaintiffs just "recycled versions of things already alleged."

Plaintiffs responded that the trial court had previously dismissed their first amended complaint based on their failure to "properly plead damages to maintain standing under either the State statute or the village ordinance." However, neither the statute nor the ordinance required them to plead damages. Rather, the plain language of the statute and the ordinance required assessing defendants' conduct to determine whether they were violating the ordinance. Despite not needing to do so, plaintiffs pointed out, they had pleaded damages in their individual affidavits by quantifying the diminution in value of their properties and "the effect it's had on their person."

Defendants countered that plaintiffs' pleadings did not show that they had standing. In addition, a claim based on fear of health effects, according to defendants, was preempted by the Telecommunications Act. Also, the DuComm antennae were not controlled by the Village, meaning that DuComm and not the Village was the proper defendant in a suit to enforce that ordinance. Finally, defendants argued that the essence of plaintiffs' complaint was "they don't want the antennas, which [was] an absolute attack on Ordinance 5606" that was prohibited after the 90-day review period had expired.

The court granted defendants' motion to dismiss, stating:

"I think I very clearly spelled out in my prior opinion what I believe that the defects were in the complaint that I was addressing at that time. I don't believe that those defects have been cured by the second amended complaint. In addition, I think many of the items that are the subject of the complaint are preempted by the [T]elecommunications [A]ct. I don't think the standing issue has been cured. I'm going to grant the motion to dismiss."

The trial court order stated that defendants' joint motion to dismiss plaintiffs' second amended complaint was granted with prejudice for the "reasons stated in open court." Plaintiffs timely appealed.

## II. ANALYSIS

### A. Standard of Review

The legal theories differ for proceeding on a motion to dismiss under sections 2--615 and 2--619. Stahelin v. Forest Preserve District of Du Page County, 376 Ill. App. 3d 765, 770-71 (2007). A motion to dismiss under section 2--615 tests the legal sufficiency of a plaintiff's claim, whereas a motion to dismiss under section 2--619 admits the legal sufficiency of a plaintiff's claim but asserts certain defects or defenses outside the pleading that defeat the claim. Fitch v. McDermott, Will & Emery, LLP, 401 Ill. App. 3d 1006, 1010-11 (2010). Like a motion brought under section 2--615, a motion to dismiss under section 2--619 admits well-pleaded facts. Stahelin, 376 Ill. App. 3d at 771. We review de novo the trial court's decisions regarding motions brought pursuant to both sections 2--615 and 2--619. Terraces of Sunset Park, LLC v. Chamberlin, 399 Ill. App. 3d 1090, 1092 (2010).

### B. Ordinance No. 3810

We begin by considering the propriety of the trial court's dismissal of counts I, II, and III of plaintiffs' second amended complaint, all premised on alleged violations of ordinance No. 3810. Plaintiffs alleged that defendants violated the "at a minimum" requirement in ordinance No. 3810 by allowing the installation of T-Mobile's structure and then mounting 13 antennae on it (9 T-Mobile antennae; 2 DuComm antennae; 2 Verizon antennae), which "nearly double[d]" the number of antennae on the water tower; by locating dangerous, high voltage electrical equipment on the water tower lot; and by creating hazardous levels of RF emissions. Essentially, plaintiffs argue that the enactment of ordinance No. 5606, which provided T-Mobile the special permit to install the structure and antennae, violated ordinance No. 3810.

## 1. Standing

The trial court dismissed counts I through III of plaintiffs' first amended complaint based on a lack of standing. According to the trial court, plaintiffs needed to plead facts to establish that they would be damaged by the installation of additional antennae. In dismissing plaintiffs' second amended complaint, the trial court likewise determined that plaintiffs had failed to cure the "standing issue." Defendants adopt the trial court's position that plaintiffs do not have standing to allege violations of ordinance No. 3810. We disagree.

Count I is premised on section 11--13--15 of the Municipal Code, which provides:

"In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, the proper local authorities of the municipality, or any owner or

tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation. \*\*\*

\* \* \*

An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions." (Emphases added.) 65 ILCS 5/11--13--15 (West 2008).

The section provides that any owner of real property within the specified area may institute an action if the owner shows that his property or person will be substantially affected by the alleged violation. Greer v. Illinois Housing Development Authority, 150 Ill. App. 3d 357, 389 (1986), aff'd, 122 Ill. 2d 462 (1988). As stated, there is no question that plaintiffs all reside within 1,200 feet of the water tower. Of critical importance in terms of standing, then, is the language that an owner need not prove any specific, special, or unique damages to himself or his property, or any adverse effect upon his property, in order to maintain a suit under this provision. This language was intended to abolish prior case law in which it was held that an owner, in order to obtain the injunctive relief provided for in the section, was obligated to prove that the alleged zoning violation amounted to a

nuisance. Greer, 150 Ill. App. 3d at 389. Based on this language in section 11--13--15, we conclude that plaintiffs do have standing.

The Greer case reached the same result on the issue of standing. In Greer, the neighbors alleged that they resided within 1,200 feet of the proposed development and that the development's violation of the Chicago zoning ordinance posed a substantial safety hazard. Greer, 150 Ill. App. 3d at 390. The developers contended that the neighbors' pleading regarding an alleged zoning violation was properly dismissed because the neighbors lacked standing to maintain an action under section 11--13--15 of the Municipal Code. Greer, 150 Ill. App. 3d at 389. Specifically, the developers argued that the neighbors' claims were insufficient to demonstrate that the developers' alleged violation of the ordinance would have a "substantial effect" on their persons or properties. Greer, 150 Ill. App. 3d at 389. The court disagreed, stating that it was the "nature of the zoning violation itself" that established the "substantial effect" sufficient to enable an owner or tenant within the requisite 1,200 feet to maintain an action for injunctive relief. (Emphasis added.) Greer, 150 Ill. App. 3d at 390; see La Salle National Bank v. Harris Trust & Savings Bank, 220 Ill. App. 3d 926, 931 (1991) (same). The court noted that the neighbors' allegations of "substantial safety hazard" based on the proposed development constituted a sufficient "substantial effect" from the alleged violation of the ordinance to withstand the developers' motion to dismiss based on a lack of standing. Greer, 150 Ill. App. 3d at 390.

Here, plaintiffs have alleged diminished property values caused by the highly visible, unsightly, and intrusive antennae; personal injuries caused by exposure to RF levels; and emotional unrest from living next to a health and safety hazard. We address plaintiffs' claim regarding RF emissions later in this opinion and determine that it is preempted by the Telecommunications Act.

But even disregarding that allegation, plaintiffs have still established standing. As in Greer, plaintiffs' allegations that they would be "substantially affected" by the installation of the structure and additional antennae because their property values would decrease is sufficient to establish standing under section 11--13--15 of the Municipal Code.

For the same reason, plaintiffs also have standing with respect to counts II and III. Zoning Code section 10--10--18(B), upon which count II is premised, contains language that is very similar to the language in section 11--13--15 of the Municipal Code:

"In case any building or structure is erected, constructed, reconstructed, altered, repaired, converted, or maintained, or any building, structure or land, is used in violation of this Zoning Code, the proper authorities of the Village or any person whose property value or use is or may be affected by such violation may, in addition to other remedies, institute an appropriate action or proceeding in equity to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, or maintenance or use, to restrain, correct or abate such violation. ***" (Emphasis added.) Glen Ellyn Zoning Code §10--10--18(B) (amended eff. June 1, 1989).

See McNamee v. Federated Equipment & Supply Co., 181 Ill. 2d 415, 425 (1998) (because of the similarity of language in the Pension Code and the Workers' Compensation Act, and because of the analogous compensation systems established in both statutes, the standards developed under the Workers' Compensation Act apply to the Pension Code). Plaintiffs have standing under section 10--10--18(B) in that they alleged that their "property values and uses will or may be affected" by the installation of T-Mobile's structure and antennae. Finally, although plaintiffs make no argument regarding standing with respect to their declaratory action in count III, our supreme court has noted

that in the context of an action for declaratory relief, a diminution in the value of property has long been recognized as sufficient to lay the basis for standing. Greer, 122 Ill. 2d at 493.

2. Failure to State a Claim

That said, the pivotal issue in this case is not standing. Rather the critical issue is whether plaintiffs have alleged a violation of ordinance No. 3810. In other words, does ordinance No. 5606, which granted T-Mobile a special-use permit to install the structure with nine additional antennae on the water tower, violate the "at a minimum" requirement in ordinance No. 3810? In analyzing the interplay between both ordinances, defendants argue that ordinance No. 5606 either impliedly or directly amended ordinance No. 3810. Plaintiffs, on the other hand, argue that the Village, "by tortured logic," harmonized ordinance No. 5606 with ordinance No. 3810. We agree with plaintiffs.

As previously mentioned, ordinance No. 5606 was enacted 16 years after ordinance No. 3810. When T-Mobile applied for a special-use permit to install the structure and 9 antennae, the water tower already contained 2 DuComm safety antennae, 2 Verizon antennae, and 9 AT&T antennae, for a total of 13 antennae. Cognizant of ordinance No. 3810's requirement that antennae on the water tower "be kept at a minimum," the Village enacted ordinance No. 5606 and included the factual finding that "the location of a total of only three cellular telephone companies on the water tower along with some essential public uses has kept such placement of antennae on the water tower at a minimum." (Emphasis added.) Glen Ellyn Ordinance No. 5606 (eff. August 27, 2007). Ordinance No. 3810 does not define the phrase "at a minimum." Still, in enacting ordinance No. 5606, the Village interpreted the location of "only three cellular telephone companies" on the water tower, namely Verizon, AT&T, and T-Mobile, as complying with the "at a minimum" requirement

in ordinance No. 3810. Therefore, rather than amending ordinance No. 3810, ordinance No. 5606 is purportedly in conformity with ordinance No. 3810.[3]

Plaintiffs clarify that they are not making a constitutional challenge to ordinance No. 5606 by trying to enforce ordinance No. 3810. See Dunlap v. Village of Schaumburg, 394 Ill. App. 3d 629, 644 (2009) (under the grant of power contained in the 1970 Constitution, a home rule unit[4] has the power to enact zoning ordinances of its choice as long as those ordinances comply with constitutional requirements). Nor are plaintiffs arguing that the Village violated statutory procedures in enacting ordinance No. 5606. See McHenry County Defenders, Inc. v. City of Harvard, 384 Ill. App. 3d 265, 283 (2008) (although municipal ordinances are presumptively valid, a party can bring a cause of action to invalidate a municipal ordinance if, for example, the ordinance is unconstitutional or the municipality did not comply with required constitutional or statutory procedures in enacting the ordinance). Instead, plaintiffs argue that "as currently configured, the [structure], the antennas mounted on it, and all related equipment do not comply with the 'at a minimum' requirement and must be reconfigured to do so." Specifically, plaintiffs alleged in their second amended complaint that ordinance No. 3810 is being violated by the "nearly" doubling of antennae, and the location of "dangerous, high voltage electrical equipment on the water tower lot." Thus, in alleging a violation of the "at a minimum" requirement in ordinance No. 3810, plaintiffs

---

[3]We note, however, that the Village does have a right to amend its ordinance or delete any provisions of it. See Condominium Ass'n of Commonwealth Plaza v. City of Chicago, 399 Ill. App. 3d 32, 40, 44 (2010).

[4]It is undisputed that the Village is a home rule unit.

obviously interpret that language differently than the Village. However, as we explain, the ambiguity of the language "at a minimum" means that we defer to the Village's interpretation of that phrase.

In construing the challenged ordinance, we apply the same principles of construction that we would in construing a statute. Victory Auto Wreckers, Inc. v. Village of Bensenville, 358 Ill. App. 3d 505, 508 (2005). Our duty is to determine and give effect to the intent of the legislative authority. Victory Auto Wreckers, Inc., 358 Ill. App. 3d at 508. "Effect should be given to the intention of the drafters by concentrating on the terminology, its goals and purposes, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance." Monahan v. Village of Hinsdale, 210 Ill. App. 3d 985, 993 (1991). We review de novo the interpretation of an ordinance. Victory Auto Wreckers, Inc., 358 Ill. App. 3d at 508. However, we agree with the trial court that the phrase "at a minimum" is ambiguous, meaning that we should give deference to the Village's interpretation. See Monahan, 210 Ill. App. 3d at 994 ("Because agencies can make informed judgments on the issues based upon their experience and expertise, it is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute").

"Minimum" is defined as "the least quantity assignable, admissible, or possible in a given case." Webster's Third New International Dictionary 1438 (1986). In enacting ordinance No. 5606, the Village made specific findings that the cellular telephone reception of a substantial number of Glen Ellyn residents would be greatly improved; that technological changes have allowed the size of cellular antennae to be reduced; that alternate placement on private property would be less desirable; and, as stated, that the location of only three cellular telephone companies on the water

tower had kept such placement of antennae on the water tower at a minimum. Given the plain meaning of the word "minimum," and our deference to the Village's interpretation that ordinance No. 5606 conforms with the "at a minimum" requirement in ordinance No. 3810, plaintiffs have failed to state a claim that ordinance No. 3810 has been violated. Thus, although we determine that plaintiffs had standing to allege that ordinance No. 3810 was violated, plaintiffs failed to state a claim that the "at a minimum" requirement was violated. See Greer, 150 Ill. App. 3d at 388, 390 (although the neighbors had standing to challenge the development's compliance with the ordinance, the neighbors failed to state a claim that the ordinance prohibited the rehabilitation contemplated by the developers). Accordingly, the trial court properly dismissed counts I, II, and III of plaintiffs' second amended complaint.

## C. Ordinance No. 5606

In each of the three remaining counts, counts IV, V, and VI, plaintiffs alleged that ordinance No. 5606 is being violated in four ways. They alleged that defendants violated ordinance No. 5606 by installing the DuComm antennae at a height greater than 140 feet; by relocating two Verizon antennae on the structure without authority and by exceeding the 132.5-foot-height restriction; by locating T-Mobile's high voltage electrical equipment outside the water tower; and by emitting potentially dangerous RF levels.

### 1. Village as Defendant

At the outset, we note that with respect to counts IV and V, the Village asserts that it is not a proper defendant. Count IV is premised on section 11--13--15 of the Municipal Code, which allows "the proper local authorities of the municipality, or any owner or tenant of real property, within 1200 feet in any direction of the property" to bring an action against the landowner for an

ordinance violation. (Emphasis added.) 65 ILCS 5/11--13--15 (West 2008). The Village is correct that although it is not apparent from the face of the statute, section 11--13--15 has been consistently held <u>not</u> to provide a private right of action against a city. <u>Dunlap</u>, 394 Ill. App. 3d at 638; see also <u>Heerey v. Berke</u>, 179 Ill. App. 3d 927, 934 (1989) ("Although the terms of the statute provide that either the city or an adjacent landowner may institute proceedings against private landowners who violate zoning ordinances, the language of the statute does not provide a cause of action against the city by a landowner"). However, as plaintiffs point out, the Village in this case is not being sued for its failure to enforce ordinance No. 5606. Instead, the Village is being sued as the landowner of the water tower and water tower lot. Plaintiffs argue that, in this respect, the Village is no different from any other owner of private land who decides to willfully violate an ordinance. Plaintiffs further argue that the Village "expressly consented to being sued" for a violation of ordinance No. 5606, in that the ordinance states:

> "Failure of the owner or other party in interest or a subsequent owner or other party in interest to comply with the terms of this Ordinance, after execution of such Ordinance, shall subject the owners or party in interest to the penalties set forth in Section 10--10--18(A) and (B) of the Village of Glen Ellyn Zoning Code." Glen Ellyn Ordinance No. 5606 (eff. August 27, 2007).

The Village has not cited a case where the municipality, as opposed to a private landowner, was being sued as the offending landowner. Thus, it appears that this scenario presents an exception to the general rule that section 11--13--15 does not a provide a private right of action against a city. Because the alleged violations of ordinance No. 5606 are based on the water tower and water tower lot owned by the Village, we agree with plaintiffs that the Village is a proper defendant in this case.

While the Village has also argued that it is not a proper defendant with respect to count V, premised on section 10--10--18(B) of the Zoning Code, that argument is easily rejected. As set forth above, ordinance No. 5606 specifically provides that the failure of the owner to comply with the ordinance subjects the owner to the penalties in section 10--10--18(B) of the Zoning Code. Thus, the Village's argument that it is not a proper defendant fails.

### 2. Standing

As with counts I, II, and III, plaintiffs argue that they have standing to enforce ordinance No. 5606. In counts IV, V, and VI, plaintiffs claimed that the alleged violations of ordinance No. 5606 diminish their property values. As we previously discussed, we agree with plaintiffs on the standing issue. It is the nature of the zoning violation itself that establishes the "substantial effect" to enable an adjacent landowner to bring a claim under section 11--13--15 (count IV); section 10--10--18(B) requires only that the property value or use may be affected (count V); and a diminution in property value is sufficient to establish standing in the context of a declaratory judgment (count VI).

### 3. Alleged Violations

#### a. RF Emissions

We turn now to the alleged violations of ordinance No. 5606 to determine if plantiffs have stated a cause of action. Beginning with plaintiffs' allegation that ordinance No. 5606 is being violated by the emission of potentially dangerous RF levels, we agree with defendants that this claim is preempted by the Telecommunications Act. Congress enacted the Telecommunications Act to promote competition and higher quality in American telecommunications services and to encourage the rapid deployment of new telecommunications technologies. City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 115, 161 L. Ed. 2d 316, 322, 125 S. Ct. 1453, 1455 (2005). "One of the

means by which it sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." Abrams, 544 U.S. at 115, 161 L. Ed. 2d at 322, 125 S. Ct. at 1455. The Telecommunications Act amended the Communications Act of 1934 to include section 332(c)(7), which imposes specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities. Abrams, 544 U.S. at 115, 161 L. Ed. 2d at 322-23, 125 S. Ct. at 1455; see also C-Call Corp. v. Zoning Board of Appeals, 298 Ill. App. 3d 1128, 1129 (1998) (the Telecommunications Act concerns state and local authority to regulate and limit the construction of wireless communication service facilities). Although the Telecommunications Act does not completely preempt state and local government authority, it does impose certain limitations. C-Call Corp., 298 Ill. App. 3d at 1130.

Section 332(c)(7) of the Telecommunications Act provides:

"(A) General Authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof--

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time ***.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v) *** Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the [Federal Communications] Commission for relief." (Emphases added.) 47 U.S.C. §332(c)(7)(A), (c)(7)(B) (2006).

Plaintiffs first argue that the Telecommunications Act is inapplicable in this case because it applies only when an application for a permit has been denied. In addition, plaintiffs argue that the Telecommunications Act is inapplicable because they are not alleging a violation of that act. We disagree. Although we have not found an Illinois case on point, foreign cases do not support plaintiffs' limited interpretation of the Telecommunications Act.

In Goforth v. Smith, 338 Ark. 65, 69-70, 991 S.W. 2d 579, 582 (1999), several landowners filed a complaint contending that the construction of a telecommunications tower in their neighborhood would, among other things, lead to detrimental environmental effects from RF emissions. The Smiths, who had leased their land for towers for communication services for several years, entered into a lease allowing a local cellular telecommunications service provider to construct a telecommunications tower on their property. Goforth, 338 Ark. at 69-70, 991 S.W.2d at 582. The Smiths and the cellular service provider filed a motion to dismiss, arguing that the allegations concerning the environmental effects of the RF emissions were preempted by federal law. Goforth, 338 Ark. at 70, 991 S.W.2d at 582. The Arkansas Supreme Court stated that although "[i]t is clear that Congress has preempted consideration of the environmental effects of radio frequency emissions in determining the location of towers," the landowners still argued that this did not preempt private causes of action based upon the environmental effects of those same emissions. Goforth, 338 Ark. at 73, 991 S.W.2d at 584. The court rejected the landowners' argument, noting that other jurisdictions in similar circumstances had determined that federal preemption limited private common-law actions as well as state action. Goforth, 338 Ark. at 73, 991 S.W.2d at 584. The court held that "Congress has exercised its authority under the Supremacy Clause of the Constitution to preempt consideration of the environmental effects of radio emissions by the state." Goforth, 338 Ark. at 74-75, 991 S.W.2d at 585.

Similarly, in Jaeger v. Cellco Partnership, No. 3:09CV567, slip op. at 1 (D. Conn. March 16, 2010), a neighboring landowner filed a complaint challenging the Connecticut siting council's decision to allow the construction of a cellular tower. The landowner alleged that the construction and operation of the cellular tower would result in harmful RF emissions causing impermissible

harm to humans and birds. Jaeger, slip op. at 1. The council and the cellular service provider argued that, to the extent that the landowner's first four claims for relief attacked the council's failure to deny the service provider's application on the basis of RF emissions, she had failed to state a claim upon which the court could grant relief, because the Telecommunications Act preempted the council's authority to render siting decisions on the basis of RF emissions. Jaeger, slip op. at 4. The court agreed, noting that section 332(c)(7)(B)(iv) preempts state and local governments from regulating personal wireless service facilities on the basis of health effects of RF emissions. Jaeger, slip op. at 5; see also Cellular Phone Taskforce v. Federal Communications Comm'n, 205 F.3d 82, 88 (2d Cir. 2000) (section 332(c)(7)(B)(iv) of the Telecommunications Act preempts state and local governments from regulating the placement, construction, or modification of personal wireless service facilities on the basis of the health effects of RF radiation where the facilities would operate within levels determined by the Federal Communications Commission to be safe); Merrick Gables Ass'n v. Town of Hempstead, 691 F. Supp. 2d 355, 362-63 (E.D.N.Y. 2010) (same). The court further noted that section 332(c)(7)(B)(v) dictates that any person adversely affected by an act or failure to act by a state or local government that is inconsistent with section 332(c)(7)(B)(iv) may petition the Federal Communications Commission for relief. Jaeger, slip op. at 5.

Plaintiffs frame their generalized claim of potentially dangerous RF levels as an alleged violation of ordinance No. 5606. It is ordinance No. 5606 that granted T-Mobile the permission to install and operate the structure and additional antennae. By alleging the existence of potentially dangerous RF emissions, plaintiffs are, in effect, challenging the Village's siting decision (i.e., the water tower) based on RF emissions, which challenge is preempted by the Telecommunications Act. Although plaintiffs cite two cases, American Tower LP v. City of Huntsville, 295 F.3d 1203 (11th

Cir. 2002), and Airtouch Cellular v. City of El Cajon, 83 F. Supp. 2d 1158 (S.D. Cal. 2000), for the proposition that consideration of health effects is permissible, these cases are distinguishable because neither case concerned the application of section 332(c)(7)(B)(iv) of the Telecommunications Act. On the contrary, "environmental effects" within the meaning of section 332(c)(7)(B)(iv) "include health concerns about the biological effects of RF radiation." T-Mobile Northeast LLC v. Town of Ramapo, 701 F. Supp. 2d 446, 460 (S.D.N.Y. 2009).

In a similar vein, plaintiffs' allegation regarding the "caution" sign fails. Plaintiffs point out that defendants have "permanently affixed a conspicuous, highly visible sign to the outside" of the water tower, which reads "CAUTION Beyond this point: Radio frequency fields at this site may exceed FCC rules for human exposure." Below that, the sign reads "For your safety, obey all posted signs and site guidelines for working in radio frequency environments." In small print, the sign says "[i]n accordance with Federal Communications Commission rules on radio frequency emissions 47 CFR 1.1307(b)." Relying on this sign, plaintiffs alleged that defendants were acknowledging the presence of potentially dangerous levels of RF fields and thus violating ordinance No. 5606. This claim is without merit. Plaintiffs admit that T-Mobile submitted an RF emissions compliance report as part of its application for a special-use permit. The report concluded that, based on modeling measurements, T-Mobile's antennae did not present any health risks to humans. Moreover, it is clear from the sign itself that it is a requirement of the Federal Communications Commission. Finally, section 332(c)(7)(B)(v) dictates that plaintiffs' remedy is to petition the Federal Communications Commission. See Jaeger, slip op. at 5.

b. Remaining Alleged Violations

Aside from the allegation premised on RF emissions, plaintiffs have alleged violations of ordinance No. 5606 that are sufficient to state a cause of action. See Napleton v. Village of Hinsdale, 374 Ill. App. 3d 1098, 1101 (2007) (we construe the allegations of the complaint in the light most favorable to the plaintiff, and a cause of action should not be dismissed pursuant to a section 2--615 motion to dismiss unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief).

First, plaintiffs alleged that the DuComm antennae, which were relocated to T-Mobile's structure, exceed the height restriction in ordinance No. 5606 by approximately seven feet. Defendants concede this fact but argue that ordinance No. 5606 permits a greater height by virtue of a special-use permit. As stated, ordinance No. 5606 permitted T-Mobile to relocate the DuComm antennae, stating that in "the event that the DuComm antennas exceed their current height of 140 feet, such relocation will require approval of a Special Use Permit for such purpose." The Village concedes that no special-use permit has been applied for or obtained. Second, plaintiffs alleged that ordinance No. 5606 did not authorize T-Mobile to relocate Verizon's two antennae, and in any event the two Verizon antennae that were relocated onto T-Mobile's structure exceed the 132.5-foot-height restriction by 2.5 feet. The final alleged violation of ordinance No. 5606 is the location of T-Mobile's electrical boxes. According to plaintiffs, ordinance No. 5606 requires that "all equipment related to T-Mobile's operation" of its antennae "be mounted on or contained within" the water tower. Plaintiffs' claim is based on T-Mobile's "Narrative Statement," which was incorporated into ordinance No. 5606, in which T-Mobile stated that the "establishment, maintenance and operation of this communications facility will be wholly contained in and on the existing municipal water tank." According to plaintiffs, the narrative statement said nothing about locating large, high voltage

electrical boxes on the water tower lot. In contravention of the ordinance, however, defendants have installed "dangerous high voltage equipment" on the water tower lot but "neither mounted on nor contained within" the water tower.

We determine that these well-pleaded facts are sufficient to allege violations of ordinance No. 5606. Therefore, the trial court erred by dismissing counts IV, V, and VI, which pertained to ordinance No. 5606.

### III. CONCLUSION

For the aforementioned reasons, we affirm the dismissal of counts I, II, and III of plaintiffs' second amended complaint, and we reverse the dismissal of counts IV, V, and VI of that complaint. Accordingly, the judgment of the Du Page County circuit court is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

O'MALLEY and HUDSON, JJ., concur.