2015 IL App (1st) 141973

FIRST DIVISION
August 24, 2015

No. 1-14-1973

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SILAS SHADID, | ) | Appeal from the |
| | ) | Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 13 M1 708482 |
| | ) | |
| BEVERLY SIMS and ANTHONY SIMS, | ) | |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| (Unknown Owners, | ) | Honorable |
| | ) | George F. Scully, Jr., |
| Defendants). | ) | Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    This case presents an issue of first impression regarding the interpretation of the City of Chicago's Residential Landlords and Tenants Ordinance (RLTO). Chicago Municipal Code § 5-12-010 *et seq.* (amended Mar. 31, 2004). We hold that tenants who prevail on a counterclaim to vindicate rights granted to them by the RLTO may recover reasonable attorney fees for prosecuting that counterclaim.

¶ 2    This case began as a garden-variety eviction lawsuit. Landlord Silas Shadid sued tenants Beverly and Anthony Sims for delinquent rent and possession under the Forcible Entry and

Detainer Act (735 ILCS 5/9-101 *et seq.* (West 2014)). The subject property was located in the Chicago. Shadid alleged that the Simses failed to pay rent when it was due. The Simses counterclaimed, alleging that Shadid had violated various provisions of the RLTO because of the poor condition of the property. Count I of their counterclaim alleged that Shadid filed the eviction suit to unlawfully retaliate against them for complaining about him to the City of Chicago regarding the bad condition of premises, a violation of the RLTO. Count II of the counterclaim alleged that Shadid failed to maintain the premises free of bedbugs, cockroaches, and rats in violation of section 5-12-110 of the RLTO. Chicago Municipal Code § 5-12-110 (amended Nov. 6, 1991). They also filed an affirmative defense regarding the poor condition of the property, seeking a set-off for any rent due.

¶ 3    After a bench trial, the court determined the Simses had met their burden on their affirmative defense, resulting in a full offset of the rent then owed. The court also found against the Simses on Count I of their counterclaim but in their favor on Count II. The court apparently awarded them no damages on Count II (the order is silent on the point), but it did grant them leave to file a petition for attorney fees. They filed a petition seeking $9,878 in attorney fees. Shadid moved to dismiss the fee petition pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)). Shadid contended that section 5-12-110 of the RLTO barred the Simses from recovering fees because they prevailed in a counterclaim rather than in their own original action. In particular, Shadid contended that provision only allowed "plaintiffs" to recover their fees. The court agreed with Shadid, granted his motion, and dismissed the petition, thus awarding the Simses no fees for their successful counterclaim. This appeal followed.

¶ 4    Shadid has not filed a brief in this court.    However, we have been aided by helpful *amicus curiae* briefs filed in support of affirmance by the Chicago Association of Realtors® and the Chicagoland Apartment Association (the "landlord *amici*"), and in support of reversal by the City of Chicago, the Legal Assistance Foundation, the Lawyers' Committee for Better Housing, the Sargent Shriver National Center on Poverty Law, the Uptown People's Law Center, and Helping Others Progress Economically (HOPE).   Therefore, we need not reverse simply because Shadid failed to file a brief.   See *First Capital Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 5    In 1986, the City of Chicago adopted the RLTO, a landmark ordinance governing the respective rights and obligations of landlords and tenants.   The constitutionality of the ordinance has been upheld against a host of constitutional challenges. *Chicago Board of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 737 (7th Cir. 1987).   The ordinance represents an effort by the city to maintain the quality of its housing stock.   Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004).   Among other things, the ordinance abolished the pervasive practice of inserting boilerplate language in residential leases making the tenant responsible for the landlord's attorney fees in eviction cases.   Chicago Municipal Code § 5-12-140(f) (amended Nov. 6, 1991). The RLTO also creates causes of action by tenants against landlords for various claims, including not keeping the premises up to certain standards.   Chicago Municipal Code § 5-12-110 (amended Nov. 6, 1991).   The section of the RLTO at issue here states:

> "Except in cases of forcible entry and detainer actions, the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable

attorney's fees; provided, however, that nothing herein shall be deemed or interpreted as precluding the awarding of attorney's fees in forcible entry and detainer actions in accordance with applicable law or as expressly provided in this ordinance."

Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991).

¶ 6     This section thus provides for an award of fees to a "plaintiff." The plaintiff in the underlying eviction case was the landlord, Shadid. However, the Simses were counterplaintiffs. The parties dispute whether the term "plaintiff" in section 5-12-180 also includes counterplaintiffs such as the Simses.

¶ 7     When a court interprets an ordinance, it must "ascertain and give effect to the drafter's intent." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 48. "All other rules of statutory construction are subordinate to this cardinal principle." *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). The ordinance's language, given its plain and ordinary meaning, is the best indication of legislative intent. *Palm*, 2013 IL 110505, ¶ 48. If a term is ambiguous, however, we can give some deference to the City's interpretation of its own ordinance. *Ruisard v. Village of Glen Ellyn*, 406 Ill. App. 3d 644, 662 (2010). Our review of both an interpretation of an ordinance and the dismissal of a claim pursuant to section 2-619 is also *de novo*. See *id.* at 661 (interpretion of an ordinance); *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29 (section 2-619 dismissals). We note that the ordinance itself states that it "shall be liberally construed and applied to promote its purposes and policies." Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004). This court has stated that "the clear intent of the ordinance is to protect tenants" and its "purpose is rooted in the public policy that recognizes that tenants are in a

disadvantageous position with respect to landlords." *Lawrence v. Regent Realty Group, Inc.*, 307 Ill. App. 3d 155, 160 (1999), *aff'd*, 197 Ill. 2d 1 (2001).

¶ 8    With those principles in mind, we find that the term "plaintiffs" must be interpreted to include counterplaintiffs. We reach this conclusion for several reasons. First, interpreting the ordinance otherwise would lead to an absurd result. Tenant A, who brought an independent stand-alone lawsuit for an RLTO violation would recover fees because she was a "plaintiff," but Tenant B, who was being sued by her landlord, and already in a disadvantaged status because of that lawsuit, could prevail on an RLTO counterclaim raising the identical facts and issues, but be denied her fees. In light of the stated purposes of the RLTO, we cannot find that the Chicago City Council intended to discriminate against eviction-defendant RLTO-counterplaintiff tenants in favor of mere RLTO-plaintiff tenants–a truly arbitrary distinction which creates a manifestly capricious result.

¶ 9    Additionally, from the standpoint of civil procedure, there is no substantive difference between a claim brought by a plaintiff and the same one brought by a counterplaintiff. Each stands on its own, must be answered by the opposing party, and is litigated in an essentially similar manner. See also 735 ILCS 5/2-401(d) (West 2014) (stating the term "plaintiff" in the Code includes counterclaimants).

¶ 10    In the court below, Shadid argued that the opening words of section 5-12-110, "Except in cases of forcible entry and detainer actions," precluded the Simses from obtaining a fee award, because the underlying case was, in fact, a forcible entry and detainer case. In this court, the landlord *amici* argue similarly. However, the Simses do not seek fees for prevailing on the forcible case; they seek fees for prevailing on their RLTO counterclaim. The prefatory clause appears to simply correlate to section 5-12-140(f)'s ban on landlords receiving attorney fees for

prevailing in standard eviction cases and does not, by its own terms, prohibit fee awards to counterclaimants who assert a nonforcible claim.

¶ 11    This court has awarded attorney fees for a tenant's RLTO counterclaim to a forcible entry and detainer case, albeit in a case where the landlord did not raise the defense presented here. In that case, this court analyzed the RLTO's fee-shifting rule and stated:

> "The ordinance was passed with a recognition of the historical disparity of bargaining positions between landlord and tenants and to protect tenants from overreaching by residential landlords. [Citation.]   The attorneys fees provisions are meant to give a financial incentive to attorneys to litigate on behalf of those clients who have meritorious cases but who, due to the limited nature of the controversy, would not normally consider litigation as being in their client's financial best interest." *Pitts v. Holt*, 304 Ill. App. 3d 871, 873 (1999).

The *Pitts* court's analysis of the RLTO's legislative purpose strongly supports our conclusion that the Chicago City Council intended that tenants should receive attorney fees under circumstances such as those present here.

¶ 12    Accordingly, we reverse the order dismissing the Simses' attorney fee petition and remand with instructions to grant the petition and award them reasonable attorney fees on Count II of their counterclaim. In the court below, the Simses' fee petition appears to seek fees for all the work on the original eviction case and the counterclaims, including a series of approximately 14 court appearances. Since the Simses did not prevail on their entire counterclaim, on remand, the trial court should consider whether any reduction in hours is appropriate. The general rule is

that, if a plaintiff does not prevail on all of his claims, hours spent on unsuccessful claims may be excluded in calculating an award of attorney fees. *Becovic v. City of Chicago*, 296 Ill. App. 3d 236, 242 (1998). However, "[w]here a plaintiff's claims of relief involve a common core of facts or are based on related legal theories, such that much of his attorney's time is devoted generally to the litigation as a whole, a fee award should not be reduced simply because all requested relief was not obtained." *Id.* The trial court should also follow the standards for presentation and review of RLTO fee petitions that we adopted in *Plambeck v. Greystone Management & Columbia National Trust Co.*, 281 Ill. App. 3d 260, 273 (1996).

¶ 13    Reversed and remanded with instructions.