# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3499

_____

Razorback Concrete Company

*Plaintiff - Appellant*

v.

Dement Construction Company, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: April 19, 2012
Filed: August 6, 2012

_____

Before MURPHY, MELLOY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Razorback Concrete Company ("Razorback") sued Dement Construction Company ("Dement") for breach of contract and fraud based on disputes over performance of a concrete supply contract. The district court[1] granted summary

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

judgment to Dement on the fraud claim and partial summary judgment to Dement as to the measure of damages for the breach of contract claim, holding that Razorback was not entitled to recover damages under a lost profits theory. After obtaining a judgment on the contract claim that it deems inadequate, Razorback appeals the grants of summary judgment. We affirm.

## I.    BACKGROUND[2]

Dement was the prime contractor on a bridge construction project, and Razorback was its concrete provider. Pursuant to a written contract requiring payment by Dement within thirty days of receiving monthly statements, Razorback was to supply concrete that met the requisite strength level for the bridge. However, some of the concrete failed strength tests after a specified twenty-eight-day interval (occurrences the parties describe as "low breaks"). As a result, Dement had to allow extra time for the concrete to strengthen to an acceptable level for the project. Dement sent a letter to Razorback on April 4, 2007 noting that the project had a time charge of $5,000 for each day that it took Dement to complete the project and that Dement considered "that thirty (30) days of time charged for [Razorback's] account would be equitable." Razorback responded in writing that the concrete was not substandard, but rather that the tests—which were not conducted by Razorback—were flawed. Additionally, Razorback inquired of Dement

> whether it is your intention to attempt to set off payments due [Razorback] for future deliveries of concrete with your claim for damages. . . . [U]nless we are told to the contrary, [Razorback] will assume that you will pay for material as it is delivered to the site. If this assumption is unwarranted you need to say so, because [Razorback] will

---

[2]The facts in this opinion are stated in the light most favorable to Razorback, the party resisting the grant of summary judgment. *See Smith v. Arrington Oil & Gas, Inc.*, 664 F.3d 1208, 1212 (8th Cir. 2012).

rely upon your failure to correct this assumption in order to make future deliveries of concrete to the site.

After receiving no response from Dement, Razorback wrote another letter on May 8 stating that it would rely on Dement's failure to respond as a representation that no amount due Razorback would be withheld as an offset. Razorback also stated that should Dement later try to offset moneys due Razorback, Razorback would have claims for breach of contract, fraud, deceit, and misrepresentation.

Dement responded on May 9 that, to Dement's knowledge, there were no more low breaks after Razorback had changed its mix design for the concrete. It also noted that it had never intended "to unilaterally deduct monies due Razorback based on this issue" and that it would continue to pay all invoices in a timely manner. In reliance on Dement's assurances, Razorback continued to supply concrete to Dement.

On May 18, Dement learned that concrete used in a "critical zone" of what it described as "probably the most critical pier in the structure" had substandard strength-test results. Furthermore, Dement was informed on June 8 that the Federal Highway Administration ("FHWA") might require concrete to be replaced if a low break were to occur in a certain area of the construction. According to Razorback, Dement's payments in June and August withheld some of the amount owed for delivered concrete and Dement stopped making any payments after August 2007. In light of what it viewed as a breach of contract by Dement, Razorback terminated the contract and refused to supply any additional concrete.

In its suit against Dement, Razorback asserted that it was entitled to $318,767, representing lost profits that it would have earned by supplying concrete for the remainder of the project. Razorback also asserted that Dement was liable for fraud because it withheld payments after promising Razorback that it would not. The district court granted summary judgment to Dement as to Razorback's fraud claim,

holding that Razorback's evidence was insufficient for a reasonable jury to find fraud. The district court granted partial summary judgment to Dement on the issue of lost profits as the measure of damages on Razorback's breach of contract claim because Razorback's evidence did not create a material question of fact regarding whether Razorback was entitled to that measure of damages under the Uniform Commercial Code ("U.C.C."). The case proceeded to trial on the remaining breach of contract claim, and Razorback obtained a jury verdict in its favor. Razorback now appeals the grants of summary judgment as to the fraud claim and the lost profits measure of damages on the contract claim.

## II.   DISCUSSION

"As a federal court sitting in diversity jurisdiction, we apply the law that the forum state would apply." *Winthrop Res. Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir. 2001). Because the district court determined that Arkansas law governs and the parties did not appeal that determination, we too will apply Arkansas law. *See Lackawanna Chapter of the Ry. & Locomotive Historical Soc'y, Inc. v. St. Louis Cnty., Mo.*, 497 F.3d 832, 835 (8th Cir. 2007). "If the Supreme Court of [Arkansas] has not addressed an issue, we must predict how the court would rule . . . ." *Eubank v. Kan. City Power & Light Co.*, 626 F.3d 424, 427 (8th Cir. 2010).

We review *de novo* a district court's grant of summary judgment and its interpretation of state law. *Best Buy Stores, L.P. v. Benderson-Wainberg Assocs., L.P.*, 668 F.3d 1019, 1026 (8th Cir. 2012). "Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Smith v. Arrington Oil & Gas, Inc.*, 664 F.3d 1208, 1212 (8th Cir. 2012). As the moving party, Dement bore "the initial responsibility of informing the district court of the basis for its motion" and needed to identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material

fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.) (en banc) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), *cert. denied*, 565 U.S. ---, 132 S. Ct. 513 (2011). If Dement met this burden, Razorback needed to submit "evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* Razorback needed to "do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Id.*

## A. Fraud Claim

Under Arkansas law, fraud consists of the following five elements: (1) "a false representation of a material fact," (2) "knowledge that the representation is false or that there is insufficient evidence upon which to make the representation," (3) "intent to induce action or inaction in reliance upon the representation," (4) "justifiable reliance on the representation," and (5) "damage suffered as a result of the representation." *Bomar v. Moser*, 251 S.W.3d 234, 241 (Ark. 2007). "Fraud is never presumed, but must be affirmatively proved, and the burden of proving fraud is upon the party who alleges it and relies on it." *Interstate Freeway Servs., Inc. v. Houser*, 835 S.W.2d 872, 873 (Ark. 1992). "An action for fraud or deceit may not be predicated on representations relating solely to future events. However, this rule is inapplicable if the person making the representation or prediction knows it to be false at the time it is made." *Goforth v. Smith*, 991 S.W.2d 579, 586 (Ark. 1999) (internal citation omitted). "While fraud may be established by circumstantial evidence, the circumstances must be so strong and well connected as to clearly show fraud." *Fowler v. SmithKline Beecham Clinical Labs., Inc.*, 225 F.3d 1013, 1016 (8th Cir. 2000) (quoting *Allred v. Demuth*, 890 S.W.2d 578, 580 (Ark. 1994)).

This case turns on whether Razorback produced sufficient evidence to create a genuine issue of material fact regarding whether Dement, at the time it assured Razorback that it would not withhold payments (a statement relating solely to future events), knew that the representation was false. *See Goforth*, 991 S.W.2d at 586.

Razorback asserts that when Dement assured Razorback in May 2007 that it would not withhold payments, Dement already intended to withhold future payments. In support, Razorback claims that Dement began withholding payments in June 2007 even though there were no problems with the concrete and that nothing, except perhaps testing procedures, had changed from the time of Dement's promise. The record demonstrates, however, that Dement learned consequential news between the time that it made the assurance to Razorback and the time that it began withholding payments. First, Dement learned that concrete used in what it claims was probably the most critical pier in the structure had substandard strength-test results. Second, Dement learned that there was no guarantee that the FHWA would allow certain concrete to remain in place in the event of a low break. In September 2007, Dement wrote to Razorback stating that removal and replacement of the concrete, if necessary, would cost approximately $420,000 to $840,000 and that, in an effort to resolve the matter without withholding payments from Razorback, Dement would accept a letter of credit for the estimated amount of the repair. Dement then stated that it would release the letter of credit if the issue was resolved without requiring repairs. In opposition to this undisputed evidence that Dement's decision to withhold payments was based on the intervening information, Razorback fails to cite any evidence suggesting that Dement's decision to withhold payments beginning in June 2007 was reached by the time of its initial assurance of continued payments in May 2007.[3]

_____

[3]Instead, Razorback suggests that Dement's explanation is not to be trusted by arguing that Dement demonstrated a lack of candor by claiming in its April 2007 letter "that the negative test[] results caused a delay of 30 days" because Charles Capps, Dement's vice president, admitted at his deposition that he "pulled the 30 day figure out of the air." However, rather than stating as fact that there was a delay of thirty days, the letter merely said "[w]e feel that thirty (30) days of time charged for your account would be equitable." Moreover, Capps testified at his deposition that there was probably *more* than a thirty-day delay attributable to Razorback. This testimony does not show that Dement is not credible, and it does not raise a material question of fact regarding whether Dement knew that its representation about future payments was false at the time of the representation.

Given Razorback's failure to identify any evidence creating a genuine issue of material fact regarding whether Dement knew its assurance that it would not withhold payments was false at the time the statement was made, the district court did not err by granting summary judgment in favor of Dement on Razorback's fraud claim.

## B.    Lost Profits Measure of Damages

When Razorback filed suit against Dement, it requested "the monies it is owed" as damages for its breach of contract claim.  However, Razorback conceded at oral argument that it was clear from its subsequent computation of damages, submitted in accordance with Federal Rule of Civil Procedure ("FRCP") 26, that it was seeking lost profits under Arkansas Code Annotated ("ACA") section 4-2-708(2), the analog of U.C.C. section 2-708(2), although it did not include a specific citation to section 4-2-708(2).  While section 4-2-708(1) provides a measure of compensatory damages to an injured seller—the difference between the unpaid contract price and the market price—premised on the seller's ability to resell the same goods at market price, section 4-2-708(2) provides for lost profits damages but only to sellers who can show that the section 4-2-708(1) damages are inadequate to place them in as good a position as performance by the buyer would have.[4]  One way to make this showing

_____

[4]Section 4-2-708 provides:

(1) Subject to subsection (2) and to the provisions of this chapter with respect to proof of market price (§ 4-2-723), the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this chapter (§ 4-2-710), but less expenses saved in consequence of the buyer's breach.

(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done

is for the seller to prove it "has the capacity to perform the contract which was breached as well as other potential contracts, due to their unlimited resources or production capacity." *Bill's Coal Co. v. Bd. of Pub. Utils.*, 887 F.2d 242, 245 (10th Cir. 1989). Such a seller is commonly referred to as a "lost volume seller." *See id.* The district court ruled in favor of Dement because it concluded that Razorback's evidence did not create a genuine question of material fact regarding whether Razorback was a lost volume seller or whether damages under section 4-2-708(1) were otherwise inadequate.[5]

On appeal, Razorback first argues that the trial court acted *sua sponte* in ruling that Razorback was not a lost volume seller because Dement never argued that Razorback was not a lost volume seller or that Razorback failed to mitigate its damages. Thus, Razorback claims that it did not have the opportunity to present evidence and argument regarding these issues. The record belies this argument. After Razorback's FRCP 26 damages calculation made clear that it was seeking lost profits, Dement, in seeking summary judgment, made multiple arguments claiming that Razorback was not entitled to lost profits, including that "[t]he U.C.C. does not permit a seller to recover consequential damages such as lost profits" and that Razorback's claim for lost profits was speculative. Razorback opposed summary

> then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this chapter (§ 4-2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Ark. Code Ann. § 4-2-708.

[5]Because Razorback does not provide any developed argument that it is entitled to lost profits under a different provision of the Arkansas code, we address its argument that it is entitled to lost profits by examining ACA section 4-2-708(2). Furthermore, we assume without deciding that the facts of this case constitute "non-acceptance or repudiation" by Dement. *See* Ark. Code Ann. § 4-2-708(1).

judgment by quoting section 4-2-708(2) in support of its position that a seller can recover lost profits under the U.C.C. and asserting that its lost profits—which it calculated as the contract price minus the cost of performance—were not speculative. Razorback further asserted that "to the extent that [Dement] may be arguing that Razorback [could not] have supplied concrete on other jobs if it had continued supplying concrete on the Dement job, . . . Razorback's high-capacity plants permitted Razorback to meet all the requirements of the Dement job as well as being able to supply concrete on other jobs." Thus, we conclude that the issue was properly before the district court.

Razorback next argues that the issue of whether it was a lost volume seller would only be relevant if Dement had argued that Razorback failed to mitigate its damages. We disagree. Section 2-708(2) generally is interpreted as placing upon the seller the burden of demonstrating that it should be compensated as a lost volume seller if that is a theory by which the seller seeks to show that damages under section 2-708(1) are inadequate. *See, e.g.*, *Bill's Coal Co.*, 887 F.2d at 245 ("Sellers have the burden of proving that they are lost volume sellers . . . ."); *R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 826 F.2d 678, 684 (7th Cir. 1987) ("Diasonics must establish, not only that it had the capacity to produce the breached unit in addition to the unit resold, but also that it would have been profitable for it to have produced and sold both. Diasonics carries the burden of establishing these facts because the burden of proof is generally on the party claiming injury to establish the amount of its damages . . . ."). Finding no Arkansas law addressing this question directly, we predict Arkansas likewise would place this burden upon the seller claiming damages. *See Marine Servs. Unlimited, Inc. v. Rakes*, 918 S.W.2d 132, 136 (Ark. 1996) ("The burden of proving damages rests on the party claiming them and the proof must consist of facts, not speculation."). At the summary judgment stage, Razorback had the burden of identifying facts that at least created a genuine issue of material fact regarding whether Razorback was eligible to recover under ACA section 4-2-708(2). To meet this burden, Razorback needed to provide the district court with sufficient

proof as to why the damages under subsection (1) were inadequate. Nothing in section 4-2-708 conditions this burden on whether the buyer asserted a failure to mitigate damages.

Razorback next argues that the district court erred by concluding that no reasonable jury could find that Razorback was a lost volume seller. Again, we disagree. The testimony of Razorback's general manager, Keith Wetsell, shows that Razorback would have had a limited capacity to perform other contracts if Dement had not breached. According to Wetsell, Razorback "probably turned away or didn't bid [on] some work that had come along during the time we were doing the Dement project . . . because we knew we were kind of at maximum peak there with their job." Although Wetsell later indicated that Razorback "could have done plenty of other work" if the opportunity were there, he specified that it would have had to be a size that Razorback could handle. Given this testimony that Razorback was operating at near peak capacity, the absence of contrary evidence indicating that Wetsell understated Razorback's capacity to supply concrete, and the lack of evidence regarding whether the additional jobs that Razorback took after ending its relationship with Dement were of a size it could have handled if it were still supplying Dement under the contract, the district court did not err in determining that Razorback failed to create a genuine issue of fact as to its status as a lost volume seller. *See Bill's Coal Co.*, 887 F.2d at 245.

Finally, Razorback contends that it is entitled to lost profits under Arkansas law based on *Capital Steel Co. v. Foster & Creighton Co.*, 574 S.W.2d 256 (Ark. 1978), where the court affirmed a jury's award of lost profits to a supplier. There are many obstacles, however, to applying *Capital Steel* to this case. First, the court held that the breaching buyer forfeited its argument that a jury instruction premised on what is now ACA section 4-2-708(2) was "an incorrect declaration of the law" because its objection to the instruction was not sufficiently specific. *Id.* at 259. Second, the court held that what is now section 4-2-708(1) was not applicable because Capital

-10-

Steel could not have tendered actual performance. *Id.* Notably, Razorback did not argue that it could not have tendered actual performance. Finally, the court held that once the instruction on damages under section 4-2-708(2) went to the jury, it was not outside the realm of the jury's competence, based on the evidence presented at trial, to find that Capital Steel "may have been in a position to make a profit on two transactions instead of one." *See id.* at 260. Here, Razorback did not provide evidence from which a reasonable jury could conclude that Razorback was in a similar position because it did not show that it had the capacity to complete profitably the project for Dement plus any of the other jobs that it acquired after ending its relationship with Dement.

We conclude that Razorback failed to supply evidence creating a fact issue regarding whether it was a lost volume seller or whether the damages provided for under section 4-2-708(1) were otherwise inadequate and that such evidence was necessary for Razorback to show successfully that lost profits under section 4-2-708(2) were potentially appropriate. Therefore, the district court did not err by granting partial summary judgment to Dement on Razorback's claim for lost profits under section 4-2-708(2).

## III. CONCLUSION

For the foregoing reasons, we affirm.

_____